**EMPLOYERS REINSURANCE CORP.**

v.

**Emmanuel L. SARRIS, Jane M. Sarris, Sarris Financial Group, Inc., Nancy De-Christoforo, Mark DeChristoforo, Morris B. Stackhouse and Massachusetts General Life Insurance Co.**

Civ. A. No. 89–6349.

United States District Court, E.D. Pennsylvania.

Sept. 7, 1990.

Susan McLaughlin, Philadelphia, Pa., for plaintiff.

David Kraut, Plymouth Meeting, Pa., for defendants Sarris.

Edward Jay Weiss, Media, Pa., for defendants DeChristoforo and Stackhouse.

Jonathan L. Braff, Philadelphia, Pa., for defendant Massachusetts.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

A non-jury trial was held in the captioned matter on August 20, 1990 in Easton, Pennsylvania. This action for a declaratory judgment and an award of monetary damages was filed by the plaintiff on September 1, 1989. The plaintiff seeks a declaration by the court that it is not obligated to provide a defense for the defendants in the instant case who are also defendants in *DeChristoforo, et al. v. Sarris, et al.*, Civil Action No. 88–5250, currently pending in the United States District Court for the Eastern District of Pennsylvania. Pursuant to Fed.R.Civ.P. 52(a); we make the following findings of fact and state the following conclusions of law.

## FINDINGS OF FACT

1. Employers Reinsurance Corporation is an insurance company duly organized under the laws of the State of Kansas with its principal place of business in Kansas.

2. The defendant, Sarris Financial Group, Inc., is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in the Commonwealth of Pennsylvania.

3. The defendants, Emmanuel L. Sarris and Jane M. Sarris, are individual citizens and residents of the Commonwealth of Pennsylvania. They are licensed to sell life insurance.

4. Nancy DeChristoforo, Mark DeChristoforo and Morris Stackhouse are all citizens of the State of New Jersey.

5. Massachusetts General Life Insurance Co. is an insurance company duly organized and existing under the laws of Massachusetts with its principal place of business in Colorado.

6. The defendants in this action are parties to litigation in connection with which Emmanuel L. Sarris, Jane M. Sarris and Sarris Financial Group, Inc. claim a right to a defense and indemnity from Employers Reinsurance Corp.

7. On September 1, 1987, Employers Reinsurance Corp. issued a policy of professional liability insurance to Emmanuel L. Sarris, which was renewed, effective September 1, 1988.

8. The policy provides coverage for: "... claims first made against the Insured and reported to the Corporation during the policy period." The policy also excluded claims for: "any dishonest, fraudulent, criminal or malicious act or assault or battery": or for: "injury arising out of any willful violation of any federal, state or municipal law, regulation, ordinance or code."

9. On May 18, 1988, Nancy and Mark DeChristoforo and Morris B. Stackhouse filed suit (hereinafter the "DeChristoforos' suit") against Emmanuel L. Sarris, Jane M. Sarris and the Sarris Financial Group, Inc. in Montgomery County, Pennsylvania, and said defendants were duly served with process. (Hereinafter the "Sarris defendants" shall include Emmanuel L. Sarris, Jane M. Sarris and Sarris Financial Group, Inc.). That action was removed to Federal Court and docketed at number 88–5250. The De-Christoforos' complaint seeks damages on two counts: fraud and deceit and unfair trade practices under Pa.Stat.Ann. tit. 73, §§ 201–1 *et seq.* (Purdon Supp.1990). No claim for negligence, breach of contract or "malpractice" is asserted.

10. The Sarris defendants initially referred the defense of the DeChristoforos' suit to the law firm of Baratta and Fenerty. Anthony P. Baratta, Esq., has been a friend of Emmanuel L. Sarris since their college days together and has provided Emmanuel L. Sarris with legal representation frequently in the past.

11. On February 28, 1989, Emmanuel L. Sarris canceled his professional liability insurance with Employers Reinsurance Corp. This cancellation occurred several months after the Sarris defendants had had notice of the DeChristoforos' suit filed against them.

12. On or about June 8, 1989, almost four months after the policy had been canceled, Mr. Baratta notified Employers Reinsurance of the DeChristoforos' suit and endeavored to tender the defense of that case to Employers Reinsurance Corp.

13. Mr. Baratta initially spoke to Annette Hollingsworth of Employers Reinsurance Corporation. Ms. Hollingsworth pulled up Sarris policy information on a computer screen and told Mr. Baratta that the policy had been canceled. The computer reading, however, gave no indication whether a policy was a "claims made" or a "claims made and reported" policy.

14. Mr. Baratta urged Ms. Hollingsworth to act immediately, not to wait for documentation. He wanted her to rely on the accuracy of his representation as a member of the bar. In a subsequent conversation that day with Douglas M. Dixon, Claims Counsel for Employers Reinsurance Corporation, Mr. Baratta again emphasized the urgency of the situation. He told Mr. Dixon that he had only just become aware of the existence of professional liability insurance, that the discovery deadline in the DeChristoforos' suit was shortly to expire, and that trial was to take place the next month, in July, 1989.

15. Mr. Dixon initially understood the Sarris policy to be a "claims made" rather than a "claims made and reported" policy. He told Mr. Baratta that he would look at the case, but that there was a problem with late notice. He also told Mr. Baratta that he needed more information. He said to Mr. Baratta that, once he had more information, he would issue a reservation of rights letter.

16. Employers Reinsurance Corporation thereafter authorized William J. Schmidt, Esquire, of the Philadelphia law firm, White and Williams, to substitute his appearance for that of Anthony P. Baratta.

17. Mr. Dixon then set in motion the paperwork necessary to have a file created and to obtain a copy of the Sarris policy from the Underwriting Department.

18. At the end of June, 1989, Mr. Dixon had received a copy of the complaint in the DeChristoforos' action from the file that had been transferred from Mr. Baratta to White and Williams.

19. On July 10, 1989, Mr. Dixon received the file from Underwriting and reviewed it and learned, for the first time, that the Sarris policy was a "claims made and reported" policy, and further, that Mr. Sarris had canceled that policy. He had also not obtained and paid for a "tail", *i.e.*, an endorsement to provide extended coverage after cancellation for a period of one year.

20. The "tail" provision of the Sarris policy reads, in pertinent part:

**AMENDATORY ENDORSEMENT— ONE–YEAR EXTENSION PERIOD**

It is agreed that Section IX, Extension Period, is amended to read as follows: If the Corporation elects not to renew this policy or if this policy is canceled by either the Named Insured or the Corporation, the Named Insured shall have the right to purchase an extension period by paying within 30 days of the termination date one-half of the annual premium as stated in the Declarations or in the latest renewal endorsement. Such extension period will begin immediately following the date of termination and will run for one year, covering claims first made against the Insured during the extension period and caused by such negligent acts, errors or omissions occurring during any prior consecutive policy periods covered by this policy, renewal thereof, or any policy issued by the Corporation which this policy replaced.

. . . .

21. On July 10, 1989, Mr. Dixon advised Anthony P. Baratta that an error had been made and that the defense of the DeChristoforos' suit must be denied since the DeChristoforos' claim had not been reported within the policy period as required by the policy. Mr. Dixon followed this conversation up with written confirmation to both Mr. Baratta and Mr. Sarris, but Mr. Baratta refused to resume handling the DeChristoforos' matter.

22. In defense of the DeChristoforos' suit, Employers Reinsurance Corporation

has paid $15,249.25 in legal fees to White and Williams.

## DISCUSSION

■ The professional liability insurance policy of the case at bar is a "claims made and reported" policy. The policy states at Section VIII: "POLICY PERIOD. This policy applies only to claims first made against the Insured and reported to the Corporation during the policy period." Under Pennsylvania law—the substantive law which applies in this diversity case [1]—any ambiguities in an insurance contract are to be construed in favor of the insured and against the insurance company, the drafter of the contract. "Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. See *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967)." *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983).

■ The policy language quoted above is clear and direct: only claims that are made and reported during the policy period are covered. In the instant case, the claim was made when the DeChristoforo plaintiffs filed suit against the Sarris defendants on May 18, 1988. For over ten months prior to the policy's cancellation, Sarris was aware of this outstanding claim. For reasons known only to himself or Sarris' attorney, Mr. Baratta, it was not reported. Instead, Sarris requested that his policy be canceled on February 28, 1989. It was not until almost four months later, in June, 1989, that Mr. Baratta informed Employers Reinsurance Corporation of the DeChristoforos' suit. Given the direct and unambiguous language of the policy and given the failure of Sarris to report a claim of which he was well aware during the policy period, we believe that the insurance company was correct in disclaiming coverage.

---

**1.** Both parties have based their briefs upon the law of Pennsylvania, and we will assume that the law of Pennsylvania applies. The case law of other jurisdictions is cited only when no binding Pennsylvania authority exists.

*Notice–Prejudice*

The Sarris defendants have vigorously contested this conclusion. They argue that the "notice-prejudice" rule, as articulated in *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977), should apply to the case at bar, that the policy should be declared void as against public policy, that the insurance company's conduct estops it from denying coverage, and that the title of the policy is misleading. We shall respond to each of these arguments in turn.

In *Brakeman*, 371 A.2d at 198, the Pennsylvania Supreme Court opined: "[W]here an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position." In *City of Harrisburg v. International Surplus Lines Insurance Co.*, 596 F.Supp. 954 (M.D.Pa. 1984), *aff'd mem.*, 770 F.2d 1067 (3d Cir. 1985), the court, while finding that a mayor-elect was not an "insured" within the meaning of the policy, also had occasion to address a challenge based upon *Brakeman*'s "notice-prejudice" rule. Like the insurer in the instant case, the insurer in *City of Harrisburg* was confronted with a demand for coverage for a claim known before the expiration of the policy period but not reported until after its expiration. As in the case at bar, the plaintiffs argued that the insurer had to show prejudice from the late notice before it could deny coverage. The *City of Harrisburg* court, however, noted that *Brakeman* had been decided in the context of an "occurrence" policy rather than a "claims made" policy. Of the difference between these two types of policies, the court said:

> Both policies are intended to insure during a specific period of time against liability arising from the conduct of the insured. One type of policy, the occurrence policy, keys upon when that conduct occurs. If it occurs during the policy period, the insurer has a duty to indemnify and defend the insured regardless of when the claim against the in-

sured is made. Conversely, the other type of policy, the claims-made policy, keys upon when the claim is asserted against the insured. If it is made against the insured during the policy period, the insurer has to perform under the contract regardless of when the conduct giving rise to the claim occurred.

*Id.* at 960.

The court in *City of Harrisburg* found this distinction of critical importance in deciding whether the *Brakeman* rule should be applied. It cited with approval to a Florida Supreme Court case, *Gulf Insurance Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512 (Fla.1983), which refused to compel an insurer to extend coverage to a legal malpractice claim made at the very end of the policy period but reported to the insurer a few months later. The *City of Harrisburg* court agreed with the Florida Supreme Court that such extension of coverage would rewrite the contract between the two parties and would ignore the benefits sought by each of the parties when a claims-made rather than an occurrence policy is purchased. Of these benefits, the court in *City of Harrisburg* stated:

> Because a claims-made insurer's liability does not extend beyond the end of a specific term, the [Florida Supreme] court stated that the 'insurer can establish his reserves without having to consider the possibilities of inflation beyond the policy period, upward-spiralling jury awards, or later changes in the definition and application of negligence.' *id.* at 516 (quoting Comment, *The "Claims Made" Dilemma In Professional Liability Insurance*, 22 U.C.L.A.L. Rev. 925, 928 (1975)). In return for this certainty, an insured pays a lesser premium, *id.* at 516; *see also Detroit Automobile Inter-Insurance Exchange v. Leonard Underwriters, Inc.*, 117 Mich.App. 300, 323 N.W.2d 679 (1982), and receives broader coverage than under an occurrence policy because conduct occurring before the policy term is covered. Comment, *supra*, 22 U.C.L.A.L.Rev. at 292.

*Id.* at 961.

The court then decided that the "notice-prejudice" rule in *Brakeman* should not

apply in the context of a claims-made policy.[2]

In concluding its opinion, the *City of Harrisburg* court noted that other considerations found in *Brakeman* did not apply in the case before it: inability of auto drivers to bargain over the uniform notice provisions found in their policies;[3] the resulting forfeiture in failing to allow for an extended reporting period; and the investigative purpose served by a notice provision in an occurrence policy. The court in *City of Harrisburg* found no forfeiture in the context of a claims-made policy because "the insured has paid a lower premium for coverage that is retrospective only. To find for the defendant insurer here would give the plaintiffs exactly what they had bargained for and not less." *Id.* at 962. In a business setting, insurers should be free to develop reasonable new approaches tailored to the needs and finances of the customer. The *City of Harrisburg* court also found a different purpose served by the notice provision in a claims-made policy: "It provides a certain date after which an insurer knows that it no longer is liable under the policy, and accordingly, allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty." *Id.* For all of the reasons articulated in its opinion, the court in *City of Harrisburg* found *Brakeman* inapplicable to the case before it.

We find the court's analysis in *City of Harrisburg* to be very much on point and persuasive in the circumstances of the instant case. Accordingly, we, too, find that a claims-made policy is of such a different nature from an occurrence policy that the

"notice-prejudice" rule of *Brakeman* should not apply.

*Public Policy*

The Sarris defendants next challenge this professional liability insurance policy on public policy grounds. Their objections focus on the "tail" provision of the policy, which reads in pertinent part:

**AMENDATORY ENDORSEMENT— ONE YEAR EXTENSION PERIOD**

It is agreed that Section IX, Extension Period, is amended to read as follows: If the Corporation elects not to renew this policy or if this policy is canceled by either the Named Insured or the Corporation, the Named Insured shall have the right to purchase an extension period by paying within 30 days of the termination date one-half of the annual premium as stated in the Declarations or in the latest renewal endorsement. Such extension period will begin immediately following the date of termination and will run for one year, covering claims first made against the Insured during the extension period and caused by such negligent acts, errors or omissions occurring during any prior consecutive policy periods covered by this policy, renewal thereof, or any policy issued by the Corporation which this policy replaced.

. . . .

The Sarris defendants contend that even though "tail" coverage was not purchased in this case, this kind of "tail" coverage is inadequate and that thi instant insurance policy should be regarded as violative of public policy.

In support of its contention, the Sarris defendants have referred the court's attention to a number of cases from other jurisdictions,[4] such as: *Brown–Spaulding &*

---

**2.** The court in *City of Harrisburg* noted that it made this determination in the absence of Pennsylvania appellate authority on the issue and could only predict what the Pennsylvania Supreme Court would hold. Counsel in the instant case have written in briefs that such absence of appellate authority still prevails and we have also been unable to ascertain any.

**3.** We do not know whether the insured in the instant case had a similar lack of bargaining power, since this issue was neither briefed nor argued to the court. We do note that the Sarris

defendants are sophisticated business people who are licensed to sell life insurance. Moreover, given the fact that the claim in the instant case was made well within the policy period, we do not believe that a lack of bargaining power— even if such existed—would have made much difference in the case at bar.

**4.** The Sarris defendants have also cited to *Village Escrow Co. v. National Union Fire Insurance Co.,* 202 Cal.App.3d 1309, 248 Cal.Rptr. 687 (1988) in which a late reported claim was held covered. *Village Escrow,* however, was decided

**566**

*Associates, Inc. v. International Surplus Lines Insurance Co.*, 206 Cal.App.3d 1441, 254 Cal.Rptr. 192 (1988); *Sparks v. St. Paul Insurance Co.*, 100 N.J. 325, 495 A.2d 406 (1985); and *Jones v. Continental Casualty Co.*, 123 N.J.Super. 353, 303 A.2d 91 (1973). We begin by noting that the courts in these cases have expressed public policy concerns on several general grounds: that a "tail" provision creates a class of orphaned claims for those "eleventh hour" claims made at or near the very end of the policy period because notification within the regular policy period could be difficult (*Brown–Spaulding*); that it is very unfair to require that an act or omission, a claim based on that act or omission, and the reporting of the claim all occur during one policy period [5] (*Sparks*); and that a policy where retroactive coverage is limited to acts and omissions occurring only during prior policy periods with the same insurer and where coverage ceases upon termination of the policy period violates the public policy of the state [New Jersey] by restricting freedom of contract and by failing to allow for extension of time for making a claim or bringing suit for latent injuries (*Jones*).

The Sarris defendants read the instant policy's "tail" provision as covering only claims which are made during the "tail" extension period and which are based on acts or omissions occurring under the standard prior policy periods. They then try to fit this interpretation into that matrix of cases which has compelled insurers to provide coverage when a claim was unknown or when an "eleventh hour" claim was made at the very end of the policy period. This is not such a case.

■ We fail to comprehend what public policy is violated if we hold that an insured is required to report a claim known to him during the full standard period of an insur-

ance policy. This is exactly the situation which confronts us here. The Sarris policy initially ran from September 1, 1987 to September 1, 1988. Subsequently, the policy was renewed for another year, from September 1, 1988 to September 1, 1989. The DeChristoforos' suit was filed in May, 1988—well before the expiration of even the initial term of the policy. That claim was known to Sarris throughout the initial policy year and for six months into the second year. Yet, the insured chose to cancel the policy in February, 1989.

If there is harm to be visited on the public by the failure of an insured to report a claim, as required by a plain provision of the policy and while that policy still had many more months to run, that harm is caused by the laxity of the insured and not by the provisions of the policy. Nor is there any merit in the Sarris defendants' contention that this policy violates an insured's freedom to contract by forever "locking" the insured in to coverage with the same insurer. As we have already noted, we are not dealing with an unknown claim. All an insured would have to do in a situation such as that presented by the case at bar is to make the claim against him known to the insurer before the policy terminated. Furthermore, even insureds with unknown claims are not forever destined to remain insured with the same company at the risk of losing protection. *Pacific Employers Insurance Co. v. Rausch*, 221 Cal.App.3d 1348, 270 Cal.Rptr. 779 (1990), rebuts this argument 270 Cal.Rptr. at 785:

> Insureds are not held 'hostage' by a 'claims made and reported' provision. An insured was [*sic*] the option of either purchasing another 'claims made' policy from the initial insurer to extend the period of coverage or purchasing a policy

on the basis of California precedent which had found the "notice-prejudice" rule applicable to both occurrence and claims-made policies. No such state authority exists for our guidance in the instant case and what authority does exist, *i.e.*, the consideration of the issue in a Middle District of Pennsylvania federal court case, *City of Harrisburg*, 596 F.Supp. 954, reaches the opposite conclusion.

5. In the instant case, there is no requirement that the act or omission occur during the policy period, but only that the claim be made and reported during the policy period. Therefore, we shall not treat the *Sparks* approach further in this opinion.

with retroactive coverage with another insurer. An insured is not locked into a contractual relationship with the initial insurer because nothing interferes with the freedom to pursue either alternative.

What the insured is trying to do in the instant case is to excuse his failure to comply with a simple and straightforward policy requirement. He seeks to rewrite the parties' original bargain because of his own error. Given the objective of a claims-made policy—to provide coverage at a lower premium to the insured since the insurer will be able to close its books on a policy with a degree of certainty—we do not find it unreasonable to require an insured who is aware of a claim made against him to report that claim according to the policy's requirements. Under the circumstances in this case, a policy offering a "tail" that may not include a claim *already* known to the insured during the policy period simply does not appear inimical to the public interest. We decline to speculate how we would interpret the "tail" provisions if we had a true "eleventh hour" claim [6] and, instead, we shall simply let the blame for the creation of the type of claim we are dealing with rest where it belongs—on the insured, or his counsel, or on both.

*Estoppel*

█ The Sarris defendants next argue that the insurer, having assumed defense of the DeChristoforos' suit, is now estopped from denying coverage. We have found that Mr. Dixon issued a general reservation of rights when he first spoke with Mr. Baratta. Also, within one month of agreeing to assume defense of the De-Christoforos' suit, the insurer discovered the cancellation of the Sarris policy and promptly notified the insured of its decision to disclaim coverage. The Pennsylvania

Supreme Court, in *Gross v. Kubel*, 315 Pa. 396, 401, 172 A. 649 (1934), quoting with approval to the court en banc below, stated:

'The rule to be gathered from the numerous reported decisions upon this subject seems to be that the entry of an appearance for an insured by his insurance company does not of itself constitute a waiver of a defense available to it under the policy it has issued, but that it is entitled to a reasonable time in which to investigate and determine whether it desires to avail itself of any defense that may be found to exist. If its investigation is conducted with reasonable dispatch and its disclaimer is made with promptness upon the discovery of the facts, it does not lose its defense by the mere entry of an appearance. There can be no final rule for determining whether a company has acted reasonably in this respect. This question must be solved by a consideration of the circumstances of each case....'

In the instant case, the time which elapsed between the notification to the insurer on or about June 8, 1989 and the decision to disclaim coverage on July 10, 1989 was little more than a month. Moreover, the insurer's decision to assume defense of the DeChristoforos' suit was prompted by the highly urgent atmosphere created by the Sarris defendants' counsel, Mr. Baratta. It was he who urged Ms. Hollingsworth and Mr. Dixon to rely on his representations about the case and to take action. It was he who told them that discovery was almost over and that the case was scheduled for trial the next month. The Sarris defendants, who, through their counsel created this emergency situation, cannot now profit from it.[7]

---

**6.** There would undoubtedly be more compelling reasons for holding a "tail" exclusion of prior claims inapplicable to a true "eleventh hour" claim.

**7.** At time of trial, the Sarris defendants referred this court's attention to *Douglas v. Evans*, 299 Pa.Super. 232, 445 A.2d 540 (1982), *vacated on other grounds*, 502 Pa. 432, 466 A.2d 1030 (1983). *Douglas* concerned an insurer's request to withdraw appearance of counsel some sixteen months after the accident in question and

without explanation as to why such a long time had elapsed before the insurer had decided to deny coverage. The *Douglas* court recognized that:

'an insurance company's continued participation in the defense of its insured's case operates as a waiver of its right to subsequently raise the question of coverage.' *Cohen Appeal (Schmittinger v. Grogan )*, 182 Pa.Super. 399, 406, 128 A.2d 114, 117–118 (1956). (Citations omitted) (Emphasis added). See also

Moreover, as was stated by the Pennsylvania Superior Court in *Wasilko v. Home Mutual Casualty Co.*, 210 Pa.Super. 322, 328, 232 A.2d 60 (1967):

'To work an estoppel, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon. Accordingly, an insurer is not estopped to deny liability on a policy where the plaintiff was not misled by the defendant's conduct.' 16 Appleman, Insurance Law § 9088 at 626.

The Sarris defendants certainly did not neglect to take action in the DeChristoforos' suit because of any conduct by the insurer. They had handled that action through their own counsel for over a year before the insurer was even notified. The representation of the Sarris defendants by White and Williams since June, 1989 cannot be said to have resulted in any prejudice to them. There has not even been the slightest intimation that White and Williams have not conducted the case competently. Moreover, White and Williams, upon instruction of the insurer, made a prompt motion for permission to withdraw, which was denied by the court on July 20, 1989, because of absence of substitute counsel and imminence of trial. The problem was caused by Mr. Baratta who refused to reaccept responsibility for the case. Were the Sarris defendants compelled to find new counsel for the DeChristoforos' suit, we believe that they could do so, unprejudiced by the conduct of the insurer within the particular circumstances of the instant case.

*Misleading Caption*

■ Finally, the Sarris defendants argue that the policy should not be enforced be-

cause the policy caption is misleading. The caption of the policy reads "This is a Claims Made Policy" in bold print. Nevertheless, the bold print reads on to say, "Please Read Carefully". As the Pennsylvania Supreme Court stated in *Standard Venetian Blind Co.*, 469 A.2d at 566:

'[I]n the absence of proof of fraud, "failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." ' *Olson Estate*, 447 Pa. 483, 488, 291 A.2d 95, 98 (1972), quoting *Orner v. T.W. Phillips Gas & Oil Co.*, 401 Pa. 195, 199, 163 A.2d 880, 883 (1960).*

---

* As Chief Justice John Bannister Gibson observed, '[i]f a party, who can read ... will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which ... is not the subject of protection, either in equity or at law.' *Greenfield Estate*, 14 Pa. 489, 496 (1850).

The very title of the policy demands that the insured read it. Within that document, as we have already found, is a clear and unambiguous provision requiring that a claim made during the policy period be reported during the policy period. It is conspicuously displayed under Section VIII. We do not find the title "misleading" nor can we excuse the insured in the instant case from the obligation imposed upon him by the Pennsylvania Supreme Court, *viz.*, to read the policy.[8]

■ We have explained in detail above why the insurer in the instant case may disclaim coverage under the Sarris policy. We must now decide whether the insurer is entitled to reimbursement for the $15,249.25 in legal fees it has paid to White and Williams to defend the DeChristoforos'

---

*Brugnoli v. United Nat. Ins. Co.*, 284 Pa.Super. 511, 517 ftn. 5, 426 A.2d 164, 167 ftn. 5 (1981). *Id.* 445 A.2d at 541.

That White and Williams are still counsel of record is attributable to the Sarris defendants' pressure upon the insurer in June, 1989 to provide an immediate defense to a suit which, they maintained, would be tried in only a matter of weeks and this court's policy of not permitting them to withdraw until the court could sort this

matter out. The Sarris defendants ought not to cite to *Douglas* where counsel's "continued" participation in the DeChristoforos' suit is of their own making.

8. Since we have found no duty on the part of the insurer to defend, we need not address the issue of the policy exclusions for fraud and violation of law.

suit. In the instant case, the insurer was conscious that, under Pennsylvania case law, the duty to defend is separate from and greater than the duty to indemnify. *D'Auria v. Zurich Insurance Co.*, 352 Pa. Super. 231, 507 A.2d 857 (1986). Rather than risk a later action alleging that it breached this duty to its insured, the insurer in the case at bar agreed to assume the defense of the DeChristoforo action and directed local counsel to enter an appearance. Unfortunately, the passage of time proved that the insurer had erred in its judgment about the obligation it owed under the Sarris policy. This was a corporate judgement that turned out to be wrong. We are not of the opinion, however, that it is the responsibility of the courts to erase the consequences of such erroneous corporate judgments. Also, the Sarris defendants stand in no contractual relationship with White and Williams. The insurance company retained the services of this law firm. In an Order following this Opinion, we shall deny the insurer's request for reimbursement of legal fees. If, however, the Sarris defendants wish to retain White and Williams as their attorneys, they shall first pay the $15,249.25 in fees within thirty days of the date of the Order. If they do not, White and Williams may file a motion, after that thirty-day period, to withdraw from the case, which motion shall be granted by the court. Following such withdrawal, the Sarris defendants shall obtain new counsel within thirty (30) days.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this matter under 28 U.S.C.A. § 1332(a) (West Supp.1990) by reason of diversity of citizenship of the parties and because the amount in controversy exceeds the jurisdictional minimum.

2. The plaintiff insurer has brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201 (West Supp. 1990).

3. The policy provision that claims made against the insured must be reported within the policy period is clear and unambiguous. The insured having failed to comply with this provision, the insurer has properly disclaimed coverage.

4. The insurance policy in the instant case does not contravene public policy.

5. The insurer's conduct in assuming defense of the DeChristoforos' suit upon the insured's counsel's representation that the situation was an emergency does not amount to an estoppel against the insurer's subsequent disclaimer of coverage.

6. The policy's title is not misleading.

7. Legal fees of $15,249.25 incurred by the insurer in the defense of the DeChristoforos' suit to date shall remain the responsibility of the insurer.

## ORDER

AND NOW, this 7th day of September, 1990, the Court ORDERS as follows:

1. Employers Reinsurance Corporation has no obligation to defend or to indemnify defendants Emmanuel L. Sarris, Jane M. Sarris or Sarris Financial Group, Inc. in connection with the matter *DeChristoforo, et al. v. Sarris, et al.*, filed in the United States District Court for the Eastern District of Pennsylvania, Docket No. 88–5250; and

2. Employers Reinsurance Corporation's request for monetary damages to reimburse it for legal fees in the amount of $15,249.25 spent on behalf of Emmanuel L. Sarris, Jane M. Sarris and Sarris Financial Group, Inc. for the defense of *DeChristoforo, et al. v. Sarris, et al.*, Docket No. 88–5250, is hereby DENIED consistent with the foregoing Opinion.

3. This case is CLOSED.