**BRITAMCO UNDERWRITERS, INC.**

v.

**EMERALD ABSTRACT CO., INC., Irene Wolfgang, T.A. Title Insurance Company, and Allen Rogers.**

Civ. A. No. 94–0316.

United States District Court,
E.D. Pennsylvania.

June 21, 1994.

Robert F. Morris, Cutler, Clemm & Morris, P.C., Plymouth Meeting, PA, for plaintiff.

John M. Hickey, Hickey, Weiser & Bellenzeni, Media, PA, for Emerald Abstract Co., Inc., Irene M. Wolfgang.

Gregg A. Parker, Media, PA, for T.A. Title Insurance Co.

Donald M. Grimes, Kelly, Grimes, Pietrangelo & Vakil, Media, PA, for Allen Rogers.

## ORDER AND MEMORANDUM

KATZ, District Judge.

**AND NOW,** this 21st day of June, 1994, upon consideration of the Plaintiff's Motion For Summary Judgment and the response of defendant T.A. Title Insurance Company and Defendant T.A. Title Insurance Company's Motion For Summary Judgment and the response of the plaintiff, it is hereby **ORDERED** that the plaintiff's motion is **DENIED** and defendant T.A. Title Insurance Company's motion is **GRANTED** in part and

**DENIED** in part. It is further **ORDERED** that this action shall be place in civil suspense pending the resolution of the underlying state court action.

**Background**

Plaintiff, Britamco Underwriters, Inc. ("Britamco") initiated this declaratory judgment action seeking relief from its duties to defend and indemnify its insureds, defendants Emerald Abstract Co., Inc. ("Emerald") and Irene Wolfgang, co-owner and President of Emerald. Emerald is a title insurance company that acted as a settlement agent in Pennsylvania real estate sales. Defendant Allen Rogers is a co-owner and Vice–President of Emerald. Defendant T.A. Title Insurance Company ("T.A. Title") is an underwriter of title insurance.

The insurance agreement at issue in this action is a "claims made" professional liability insurance policy (the "Policy") issued by Britamco to Emerald that was in effect for the period April 19, 1991 through April 19, 1993 (the "Policy Period"). Pl.Mot.Summ.J., Ex. A. A "claims made" policy insures the policy holder against claims made during the life of the policy as opposed to an "occurrence" policy, which insures against "occurrences" which take place during the policy period and for which claims may arise during the policy period or at a later date. *Bensalem Township v. Western World Ins. Co.,* 609 F.Supp. 1343, 1347 n. 2 (E.D.Pa.1985). In addition to the temporal exclusion inherent in its "claims made" nature, the Policy, by its terms, excludes coverage for "any act, error or omission of the Insured committed with actual dishonest, fraudulent, criminal or malicious purpose or intent." Pl.Mot.Summ.J., Ex. A, ¶ D(1). The Policy also excludes coverage for liability resulting from an inability to pay or collect money. *Id.,* Ex. A, ¶ D(11).

During the Policy Period, Emerald, performed services pursuant to a written contract for T.A. Title. Def.Mot.Summ.J., Ex. A, ¶ 2. Emerald's contract with T.A. Title required that all funds collected by Emerald at settlements, including transfer taxes and recording fees be held in Emerald's escrow account. Pl.Mot.Summ.J., Ex G, p. 14. As a result of the negligence of Emerald personnel and/or the or the intentional acts of Irene

Wolfgang, some settlement funds were deposited directly in Emerald's operating account or other accounts rather than Emerald's escrow account, and other settlement funds originally placed in Emerald's escrow account were subsequently transferred to Emerald's operating account and used to cover Emerald's operating expenses and other obligations. Pl.Mot.Summ.J., Ex G, pp. 14–24, Ex. H, pp. 33–36. This misappropriation of funds resulted in escrow shortages, transfer tax shortages and a failure to record deeds properly. Def.Mot.Summ.J., Ex. A, ¶ 3, Ex. B, ¶ 9; Pl.Mot.Summ.J., Ex. H, pp. 38–39.

In June of 1992, when T.A. Title became aware of these irregularities in Emerald's practices, T.A. Title initiated a private investigation of Emerald's operations. Def.Mot. Summ.J., Ex. B, ¶ 5. *Id.* Shortly after T.A. Title commenced its investigation, T.A. Title notified Britamco by letter dated June 29, 1992, that Emerald "has been performing its business duties in an incompetent fashion thereby causing losses to us and to our insureds." Pl.Mot.Summ.J., Ex. E.

On July 2, 1992, T.A. Title commenced an action in equity by filing a Complaint in the Delaware County Court of Common Pleas against Emerald, Irene Wolfgang and Allen Rogers seeking equitable relief. Pl.Mot. Summ.J., Ex. B. The Complaint alleges that Emerald failed to satisfy fiduciary obligations including: (1) failing to record deeds on 28 properties; (2) failing to record 25 mortgages; (3) failing to pay transfer taxes and recording fees; and, (4) failing to hold sufficient funds in escrow to meet future obligations, and that T.A. Title was potentially responsible for these deficiencies *Id.,* Ex. B, ¶¶ 21–24. In addition, the Complaint alleges that Emerald failed to provide T.A. Title with complete records of settlements involving T.A. Title as title insurance underwriter. *Id.,* Ex. B, ¶¶ 16, 18, 25–27. The Complaint requests: (1) an accounting of Emerald's operations; (2) injunction prohibiting Emerald from conducting settlements in the name of T.A. Title; and, (3) formation of a constructive trust naming T.A. Title as the equitable owner of property improperly purchased by Irene Wolfgang with settlement funds that

should have been held in escrow. *Id.*, Ex. B, ¶¶ 33–40.

On June 28, 1993, T.A. Title filed an Amended Complaint in the state court action adding claims for breach of contract and negligence. *Id.* Ex. C. In addition to filing the state court action against Emerald and its officers, T.A. Title reported Irene Wolfgang's activities to law enforcement authorities. Pl.Mot.Summ.J., Ex. I, pp. 46–47.

T.A. Title's investigation of Emerald's operations and records resulted in the production of a report titled "Emerald Abstract Company Reconstruction Project" (the "Reconstruction Project"). Maureen Wroblewski, Assistant Treasurer and Escrow Accounts Manager of T.A. Title, supervised the preparation of the Reconstruction Project. Def.Mot.Summ.J., Ex. B, ¶ 6. The Reconstruction Project was completed on September 4, 1992. Pl.Mot.Summ.J., Ex. H, p. 32. T.A. Title forwarded the Reconstruction Project to Britamco during the Policy Period and prior to the filing of the Amended Complaint. Def.Mot.Summ.J., Ex. C, p. 104. The Reconstruction Project indicates: (1) that funds that should have been placed in Emerald's escrow account were placed in its operating account; (2) that funds that should have been placed in Emerald's escrow account were not deposited in its escrow account or its operating account; (3) that funds were transferred from Emerald's escrow account to its operating account; (4) that funds due were not collected by Emerald at certain settlements; (5) that the Emerald escrow account incurred overdraft and service charges; and, (6) that Irene Wolfgang used funds deposited in the Emerald escrow account to complete settlement on personal real property. Pl.Mot. Summ.J., Ex. D, Ex. H.

Maureen Wroblewski summarized T.A. Title's investigation and the Reconstruction Project as follows:

> I concluded that Emerald Abstract's settlement practices were careless, substandard and contained errors in arithmetic and other accounting mistakes which caused incorrect amounts of money to be received and deposited into Emerald's accounts, moneys to be incorrectly deposited into the wrong accounts, moneys to be paid out to incorrect parties or in incorrect amounts, and a failure to pay out monies which were required to be paid out as a result of settlement....

> ... For instance, certain disbursements required to be made in the course of settlement were simply written in the wrong amount. Over time, these mistakes in the aggregate cause a shortfall in Emerald's accounts....

> It was difficult if not impossible to ascertain the exact amount of loss and to completely understand all the errors and mistakes that were made during the course of time that Emerald conducted settlements because of incomplete documentation and lack of memory on the part of Irene Wolfgang, President of Emerald Abstract, Inc.

Def.Mot.Summ.J., Ex. B. In addition, T.A. Title concluded "that Irene Wolfgang on certain occasions may have intentionally ignored proper settlement practices by diverting funds from settlements into wrong accounts or failing to make required disbursements to designated parties." Def.Mem. pp. 6–7.

The instant cross motions for summary judgment raise two issues. First, whether Britamco has a duty to defend Emerald in the underlying state court action and second, whether Emerald is entitled to indemnification under the Policy.

## Summary Judgment

■■■ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing there are no genuine issues of material fact, *Gans v. Mundy*, 762 F.2d 338, 340–41 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and the non-moving parties may not rely merely

upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). The facts must be viewed in the light most favorable to the non-moving parties and all reasonable inferences must be drawn in their favor. *Matsushita Electric industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

**Pennsylvania Law**

 Pennsylvania law applies in this diversity case. *Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 399 (3d Cir.1987) (federal court sitting in a diversity case must apply the choice of law rules of the forum state); *Compagnie des Bauxites v. Argonaut–Midwest Ins. Co.,* 880 F.2d 685 (3d Cir.1989) (citing *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964)) (Pennsylvania's choice of law approach combines the Restatement (Second) of Conflicts of Law, commonly known as the most significant relationship test, with interest analysis). Under Pennsylvania law, any ambiguities in an insurance contract are to be construed in favor of the insured and against the insurance company, the drafter of the contract. *See e.g., Employers Reinsurance Corp. v. Sarris,* 746 F.Supp. 560, 563 (E.D.Pa.1990). Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. *See Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983).

**Parties' Positions**

Britamco asserts that pursuant to the "claims made" provision of the Policy it is not obligated to defend or indemnify Emerald in the underlying state court action because it was not explicitly notified that the state court action was based, at least in part, on negligence until after the expiration of the Policy. *See Sarris,* 746 F.Supp. at 565.[1] It is undisputed that T.A. Title's state court claim against Emerald was made and that Britamco received notice of the general nature of that claim during the Policy Period. However-

er, Britamco focuses solely on T.A. Title's pleadings in the underlying state court action and contends: (1) the original Complaint did not specifically state negligence as a basis for relief; (2) the Amended Complaint, which was filed outside the Policy Period, for the first time articulated a claim for negligence; and, (3) therefore, because negligence was not specifically pleaded during the Policy Period, under the terms of the Policy, which exclude coverage for intentional actions, Britamco has neither an obligation to defend nor indemnify Emerald. Pl.Mot.Summ.J., pp. 11–13. In the alternative, Britamco argues that the court should look beyond the underlying state court Complaint and examine the merits of the state court action to determine whether any of the alleged wrongdoing was, in fact, unintentional. *Id.* pp. 6–10. Britamco asserts that such an inquiry will result in summary judgment in its favor. Britamco also argues that the policy exclusion for claims based upon an "inability to pay or collect any money" relieves it of any obligation to defend or indemnify Emerald. *Id.* p. 10.

T.A. Title argues that: (1) Britamco was given timely and sufficient notice of the claims against Emerald in the underlying state court action; and, (2) there exists a material issue as to whether the underlying action is based on negligent or intentional wrongdoing. Def.Mem., pp. 4–8, 10–12.

**Duty to Defend**

 Britamco has a duty to defend. Under Pennsylvania law, the right of an insured to a defense turns on whether the complaint states a claim that potentially comes within the coverage of the policy. *Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484 (1959). If coverage depends upon undetermined facts, the insurer is obliged to provide a defense "until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage." *C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.,* 467 F.Supp. 17, 19

---

1. The court recognizes the *Sarris* holding that the "notice prejudice" rule of *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977) should not apply to "claims made" policies. *See also*

*Clemente v. Home Ins. Co.,* 791 F.Supp. 118 (E.D.Pa.1992); *City of Harrisburg v. International Surplus Lines Ins. Co.,* 596 F.Supp. 954 (M.D.Pa. 1984), *aff'd mem.,* 770 F.2d 1067 (3d Cir.1985).

(E.D.Pa.1979). In addition, an "insurer is obliged to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *Id.*

In determining the extent to which an insurer owes its insured an obligation to defend the law of Pennsylvania is based on two principles. First, the law looks to the four corners of the complaint to define the claim. *United Servs. Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986). Second, the issuer of a liability insurance policy has a duty to defend its insured "when the allegations in the complaint against it could potentially fall within the coverage of the policy." *Air Products and Chemicals, Inc. v. Hartford Accident and Indemnity Co.,* 25 F.3d 177, 179 (3d Cir.1994) (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.,* 410 Pa. 55, 188 A.2d 320 (1963)) (emphasis original). My reconciliation of these two notions is that the claim entitles the insured to a defense if it could reasonably be amended to state a claim under the policy. *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.,* 766 F.Supp. 324 (E.D.Pa.1991), *aff'd in part without op.,* 961 F.2d 209 (3d Cir.1992) (table).

In Pennsylvania cases dealing with policy exclusions, courts have consistently denied coverage where the allegations of the underlying complaints clearly fall within policy exclusions. See *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246 (1988), where the court found no duty to defend assault and battery claims when the policy excluded intentional torts, and *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172 (1991), *alloc. denied,* 531 Pa. 646, 612 A.2d 985 (1992), where the court found no duty to defend when the allegations in the complaint of intentional gunshots clearly fell within the policy's exclusion of "expected or intended" damage.[2] In these instances, the claims could not be reasonably amended to come within the coverage of the policy. *See Wilson v. Maryland Cas. Co.,* 377 Pa. 588, 594, 105 A.2d 304, 307 (1954). On the other hand, Pennsylvania courts have consistently held that tort actions which are viable whether the alleged wrongdoing is found to be intentional or negligent trigger the duty to defend under insurance policies that exclude coverage for injuries "expected or intended" by the insured. *Safeguard,* 766 F.Supp. at 329–333 (Slander claim viable as intentional, reckless or negligent defamation, therefore, policy exclusion for knowingly making false statement did not relieve insurer of duty to defend); *Gene's Restaurant,* 519 Pa. at 309 n. 1, 548 A.2d at 247 n. 1 (citing *Elitzky,* 358 Pa.Super. 362, 517 A.2d 982).

The theory articulated in the state court Complaint is that Emerald and its officers breached their fiduciary duties by misappropriating settlement funds. So long as they breached such duties, whether they acted negligently, intentional or both negligently and intentionally in misappropriating settlement funds is immaterial to the relief sought in the Complaint. Thus, the allegations in the Complaint neither establish coverage nor expressly rule it out, and, consequently, Britamco has duty to defend. *Air Products,* 25 F.3d at 178–180. In addition, the fact that the Amended Complaint articulates a claim for negligence and in no way contradicts the Complaint supports the position that the allegations in the Complaint potentially fall within the coverage of the policy. *Id.*[3]

Further, inherent in Britamco's argument that the Complaint did not specifically state a claim for negligence and, therefore, the duty to defend is not triggered, is the position that the allegations in a complaint against an insured are determinative of that insured's substantive right to a defense from its insurer. To make pleadings determina-

---

**2.** *See also Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363 (1987) (a policy insuring "use and operation" of an automobile could not be triggered by a 3–year old, who cannot "use" an automobile as a matter of law).

**3.** Because the Complaint triggers Britamco's duty to defend it provides sufficient notice of a claim against Emerald. Because the Complaint was received by Britamco during the Policy Period T.A. Title's claims fall within the "claims made" provision of the Policy. Therefore, the fact that the Amended Complaint was filed outside the Policy Period is immaterial.

tive and ignore whether a claim *potentially* may become one which is within the scope of the policy, would be to turn the issue of coverage over to the vagaries of an opponent's pleadings. *See Cadwallader* 396 Pa. at 589, 152 A.2d at 488. The overstatement of a claim or the hyperbole of the pleader should not control whether an insured is entitled to a defense. *Safeguard,* 766 F.Supp. at 330. "This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurers) interest to reveal them." *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 66, 571 N.Y.S.2d 672, 674, 575 N.E.2d 90, 92 (1991).

■ Britamco's alternative argument that the court should examine the summary judgment record and determine whether there is an issue of fact as to whether any of the alleged misappropriation of funds was unintentional is foreclosed by the Third Circuit's recent *Air Products* decision. In *Air Products,* the court held that, in a duty to defend action, evidence may be introduced to determine if an exception to an exclusion applies (to show coverage), but evidence may not be introduced to determine that an exclusion applies (to show no coverage). Compare *Northern Ins. Co. v. Aardvark Assocs.,* 942 F.2d 189 (3d Cir.1991) (insured has burden to prove the allegations fell within the "sudden and accidental" exception to a pollution exclusion) with *Air Products,* 25 F.3d at 179 ("when allegations may or may not fall within the exclusion (and therefore the coverage), the insurer is required to defend" citing *Safeguard,* 766 F.Supp. 324). The section of the Policy that excludes liability for intentional misappropriation is titled an "Exclusion". Pl.Mot.Summ.J., Ex A, ¶ D. Therefore, the court should constrain its examination to the Complaint, which clearly triggers a duty to defend.

In addition, assuming *arguendo* that this is one of the rare occasions where evidence is admissible to establish coverage, T.A. Title has come forth with affidavits and other materials that establish a genuine issue of fact as to whether at least some portion of the alleged misappropriation was negligent rather than intentional. *See* Def.Mot.Summ.J., Ex. B. Further, the deposition testimony of Irene Wolfgang, upon which Britamco relies, does not foreclose a finding that the misappropriation of funds was, at least in part, the result of negligence rather than intentional wrongdoing. Irene Wolfgang testified that some of the escrow shortages experienced by Emerald were the result of bad checks received from third parties and her subsequent mismanagement of those situations. Pl.Mot. Summ.J., Ex. G, pp. 17–18. When questioned about the claim of negligence in the Amended Complaint, Irene Wolfgang testified:

> I had a question all along what the term negligence really means, but what I would say is that everything done at Emerald Abstract was my decision as far as moving funds, et cetera. I was fully aware of what I did. Was it a hundred percent of the time? I can't answer that because I am sure that there were times that I was negligent. . . .

*Id.,* p. 27. Later in her deposition she repeated this answer in substance when questioned about the possibility of mistakes or carelessness leading to settlement shortages. *Id.,* p. 46. There exists an issue of material fact as to whether the misappropriation of funds was, at least in part, the result of negligence.

■ Britamco's position that the viable claims in the underlying state court action fall completely within the Policy exclusion for an inability to pay or collect money is without merit. The Policy clearly covers liability for professional negligence. Pl.Mot.Summ.J., Ex A, ¶ A. The exclusion must be read narrowly. *Employers Reinsurance Corp.,* 746 F.Supp. at 563. The fact that acts of professional negligence by an insured result in that insured's inability to pay obligations does trigger the inability to pay exclusion of the Policy. The liability in such situations arises from negligence, not an inability to pay money, and is therefore covered under the Policy.

### Indemnification

What fraction, if any, of the insureds' liability in the underlying state action stems

from negligence cannot be determined on the present record. It follows then, that the extent of Britamco's obligation to indemnify Emerald, if any such obligation exists, cannot be determined on the present record. The court will place this matter in civil suspense pending the outcome of the underlying state court action.