**I.C.D. INDUSTRIES, INC., Plaintiff,**

v.

**FEDERAL INSURANCE CO., Defendant.**

**Civ. A. No. 93–4105.**

United States District Court,
E.D. Pennsylvania.

March 14, 1995.

Phillip J. Meyer, Labrum and Doak, Philadelphia, PA, for plaintiff.

Ronald C. Yen, West Chester, PA, Michael J. Plevyak, White and Williams, Paoli, PA, for Federal Ins. Co.

Steven D. Johnson, Roann L. Pope, Hecker, Brown, Sherry and Johnson, Jeffrey A. Lutsky, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Alexander & Alexander, Inc.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff ICD Industries ("ICD") was insured under a policy issued by Federal Insurance Company ("Federal") which, *inter alia,* afforded coverage resulting from an advertising injury. ICD has brought this declaratory judgment action claiming that it is entitled to recover attorney fees and costs it incurred in defending against a patent infringement action. Currently before the Court are the parties' cross motions for summary judgment. Presented for resolution are two issues: (1) whether the patent infringement lawsuit brought against ICD can be fairly said to have stated an advertising injury claim, and (2) the extent to which Federal was obligated to consider evidence outside of the allegations made in the underlying complaint when determining whether it had a duty under the policy to afford ICD a defense. For the following reasons, the Court will deny ICD's motion for summary judgment and grant Federal's motion.

### I.

On or about November 30, 1988, ICD purchased a commercial excess umbrella insurance policy [1] from Federal (the "Federal policy") to protect it from professional liability up to the policy's limit of $25,000,000. As a condition for the issuance of the Federal policy, ICD agreed to maintain underlying insurance with Cigna Insurance Company ("Cigna"). Both the Federal policy and the Cigna policy were in effect at all relevant times.

On March 16, 1990, ICD was named as a co-defendant along with the Confab Corporation ("Confab") in a patent infringement suit filed by the Procter & Gamble Company in the Eastern District of Pennsylvania (the "Procter & Gamble action"). *See Procter & Gamble Co. v. ICD Indus.,* Civil Action No. 90–1862 (E.D.Pa. March 16, 1990). In that action, Procter & Gamble sought a declaration by the Court that a patent it held for a certain sanitary napkin design was valid and had been infringed by the defendants, a permanent injunction against the defendants forbidding them from any further alleged infringement of the patent, and an award of treble damages for the defendants' willful and deliberate violation of the patent.

Fourteen months after the filing of the complaint, and after having conducted discov-

---

1. The Federal policy provides excess umbrella coverage. An excess umbrella policy is generally designed to provide coverage in excess of the insured's policy with a primary insurer, but only if the underlying insurer covers the claim. If the insured's claim does not fall within the purview of the underlying policy, the excess umbrella policy serves as the primary insurance coverage for all claims within the excess umbrella policy's terms. 8A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4909.85 (1981).

ery concerning ICD's and Confab's promotional and marketing activities, Procter & Gamble was granted leave to file an amended complaint to assert, in addition to its claim of patent infringement, a claim for unfair competition. The claim of unfair competition allegedly stemmed from false advertising by the defendants that tended to deceive the public and place Procter & Gamble's products in a negative light. Based on this newly stated unfair competition claim, Cigna agreed to defend ICD in the Procter & Gamble action and to pay for all defense costs incurred by ICD from the time of the filing of the amended complaint forward. Cigna, however, refused to reimburse ICD for the costs of defending the Procter & Gamble action prior to the filing of the amended complaint.

In light of Cigna's position, ICD sought recompense from Federal for defense costs it had incurred for the time period from the filing of the initial complaint to the filing of the amended complaint. According to Coverage B of the Federal policy, ICD's coverage extended to any loss arising out of, *inter alia,* an "advertising injury."[2] Federal rejected ICD's claim.

On March 10, 1992, the parties to the Procter & Gamble action settled their differences and the case was dismissed. ICD thereafter initiated the present case seeking a declaration from the Court that it is entitled to coverage from Federal for defense costs it shouldered prior to the filing of the amended complaint, when Cigna agreed to assume the costs of defense.

## II.

The standards by which a court decides a summary judgment motion do not change when the parties file cross motions. *Southeastern Pa. Transit Auth. v. Pennsylvania Pub. Util. Comm'n,* 826 F.Supp. 1506 (E.D.Pa.1993), *aff'd,* 27 F.3d 558 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 318, 130 L.Ed.2d 279 (1994). Summary judgment may thus be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on cross motions for summary judgment, a ruling court must consider the motions independently. *Williams v. Philadelphia Hous. Auth.,* 834 F.Supp. 794 (E.D.Pa. 1993), *aff'd,* 27 F.3d 560 (3d Cir.1994). Accordingly, the evidence in each motion is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party bears the initial burden of pointing out the absence of genuine issues of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), but once it has done so, the party opposing the motion cannot rest on its pleadings, Fed. R.Civ.P. 56(e). Rather, the opposing party must come forward with facts showing that a genuine issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

The present matter is before the Court based on the Court's diversity jurisdiction. The parties have relied principally on Pennsylvania law in their pleadings. To the extent that the law of a state other than Pennsylvania could control the resolution of these motions, the Court concludes that the issue has been waived by the parties, *see Mellon Bank, N.A. v. Aetna Business Credit,*

---

**2.** The exact language of the provision under which ICD seeks coverage, Coverage B, is as follows:

> We will pay on behalf of an insured, damages with respect to liability loss in excess of the [listed deductible] ..., or the amount payable by any [insurance other than the scheduled underlying insurance], whichever is greater. We will pay such damages when liability is imposed on the insured by law or assumed by the insured under an insured contract because of bodily injury or property damage which occurs during the policy period and is caused by an occurrence; and we will pay such damages when liability is imposed on the insured by law or assumed under an insured contract because of personal injury or advertising injury to which this coverage applies, caused by an offense committed during the policy period.
>
> Also, Coverage B will NOT apply to any loss for which insurance is afforded under Coverage A or which arises out of subjects of insurance or exposures to loss for which Underlying Policies are required to be maintained hereunder.

The Federal policy lists no deductible.

*Inc.*, 619 F.2d 1001, 1005 n. 1 (3d Cir.1980), and that Pennsylvania law shall apply.[3]

■ In applying Pennsylvania law and in the absence of controlling authority by the Supreme Court of Pennsylvania, this Court is compelled to predict how the Supreme Court of Pennsylvania would resolve the questions posed in this case. *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3d Cir.1985). Though not controlling, decisions from Pennsylvania's lower appellate courts are considered predictive, and in the absence of an indication otherwise, shall be accorded significant weight. *Kiewit Eastern Co. v. L & R Constr. Co.*, 44 F.3d 1194, 1201 n. 16 (3d Cir.1995) (citing *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir. 1985)).

### III.

ICD asserts that Federal's denial of ICD's claim for reimbursement of defense costs incurred prior to the filing of the amended complaint was improper because the allegations in the Procter & Gamble original complaint resulted from an alleged "advertising injury," a type of claim that was afforded coverage under the Federal policy. "Advertising injury" in the Federal policy is defined as:

 a. libel, slander or defamation;

 b. any infringement of copyright, title or slogan;

 c. piracy, unfair competition or idea misappropriation under an implied contract;

 d. any invasion of right of privacy;

committed or alleged to have been committed during the policy period in any advertisement, publicity article, broadcast or telecast and arising out of the insured's activities.

ICD posits that the patent infringement allegation set forth in Procter & Gamble's initial complaint falls within the term "piracy" included in the Federal policy's definition of "advertising injury." Federal, however, counters that it is not required to provide coverage under the policy because an advertising injury cannot arise out of a patent infringement action as a matter of law.

As an alternative argument, ICD avers that it is entitled to coverage because Procter & Gamble had also sought damages from ICD for "unfair competition," a term included within the Federal policy's definition of an advertising injury.[4] Although Procter & Gamble's claim for unfair competition was not included in the initial complaint, ICD insists that the initial complaint, when read in conjunction with 1) the allegations in the amended complaint, 2) certain document requests propounded by Procter & Gamble during discovery, and 3) Procter & Gamble counsel's line of questioning at a deposition taken *prior* to the filing of the amended complaint, potentially asserts a claim for unfair competition within the meaning of the Federal policy. The Court will address the parties' asseverations *seriatim*.

### A.

■ It is beyond peradventure in Pennsylvania that the task of interpreting an insurance contract is performed by a court. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 304, 469 A.2d 563, 566 (Pa.1983). "The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Id.* at 305, 469 A.2d at 566. When interpreting an insurance policy, the basal inquiry a court must make is

---

3. The Court is bound in determining which law to apply by the choice of law rules in the state in which it sits. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir.1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941)). Pennsylvania conflicts principles dictate that an insurance contract is guided by the law of the state in which it is delivered. *Travelers Indem. Co. v. Fantozzi ex rel. Fantozzi*, 825 F.Supp. 80, 84 (E.D.Pa.1993). Where, as in this case, no proof has been offered regarding where the contract was delivered, the law's presumption is that the

insured's state of residence is the place of delivery. *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 562 n. 1 (3d Cir.1976) (citing *Crawford v. Manhattan Life Ins. Co.*, 208 Pa.Super. 150, 155, 221 A.2d 877, 881 (Pa.Super.1966)). Because ICD, the insured, is a Pennsylvania resident, Pennsylvania law shall therefore govern this case.

4. Neither "piracy" nor "unfair competition" is further defined in the Federal policy.

whether the contract's disputed terms are ambiguous. *See St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.1991). Words are considered ambiguous if they "may reasonably admit of different meanings." *Mendel v. Home Ins. Co.,* 806 F.Supp. 1206 (E.D.Pa.1992) (quoting *Mellon Bank,* 619 F.2d at 1011). Any ambiguities a court finds when analyzing the policy must be construed against the insurer and in favor of coverage. *St. Paul Fire & Marine,* 935 F.2d at 1431. This principle holds true even where the insured is a commercial entity. *ACandS, Inc. v. Aetna Casualty & Sur. Co.,* 764 F.2d 968, 973 (3d Cir.1985).

▆▆▆▆ The course of the parties' arguments requires the Court to first consider whether the term "advertising injury," as used in the Federal policy includes a claim for patent infringement. Federal chooses to state its argument in absolute terms, claiming that "advertising injury" as defined in the Federal policy cannot, as a matter of law, encompass a patent infringement action. In support, Federal cites to a myriad of cases emanating from outside this jurisdiction which purportedly makes this a foregone legal conclusion. *See, e.g., Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500 (9th Cir.1994); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.,* 824 F.Supp. 583 (E.D.Va.1993), *aff'd,* 21 F.3d 424 (4th Cir. 1994); *National Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77 (N.D.Cal.1989); *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 833 P.2d 545, 10 Cal.Rptr.2d 538 (Cal.1992) (en banc); *Aetna Casualty & Sur. Co. v. Superior Court,* 19 Cal.App. 4th 320, 23 Cal.Rptr.2d 442 (Cal.Ct.App.1993); *A.*

*Meyers & Sons Corp. v. Zurich Am. Ins. Group,* 74 N.Y.2d 298, 545 N.E.2d 1206, 546 N.Y.S.2d 818 (N.Y.1989). To the contrary, ICD points out that none of these cases spring from familiar soil, all the while contending that the cases concerned a duty to indemnify on the part of an insurer rather than the far broader duty to defend, which ICD asserts is the duty implicated in this litigation.[5] There appears to be no Pennsylvania appellate decision on point which supports either side's argument.

Since the filing of these motions, however, Judge Waldman of this Court has opportunely taken up the issue of whether an advertising injury is alleged in a patent infringement action. In *Atlantic Mutual Ins. v. Brotech Corp.,* 857 F.Supp. 423 (E.D.Pa.1994), an insured corporation filed a declaratory judgment action against its insurer seeking indemnification and reimbursement for the defense costs it had assumed in defending a patent infringement suit. The insured contended, on the basis of policy language nearly identical to that here,[6] that the patent infringement claim made against it was in essence a charge of "piracy" that accordingly fell within the scope of the policy's coverage for an "advertising injury." The term "piracy" in *Brotech,* just as here, was undefined in the insurance policy. The Court agreed with the insured that, in the abstract, and according to the insurance policy's common usage, the term "piracy" could possibly refer to patent infringement. The Court specified, however, that this argument missed the point. Because the insurance policy used the term "piracy" within its definition of "advertising injury," the "issue [was] not what the isolated term 'piracy' could mean, but what

---

**5.** An insurer's duty to defend, which requires only that an insurer pay an insured for the costs associated with the insured's defense of a separate action, is separate and distinct from the duty to indemnify the insured for all liability incurred. *J.H. France Refractories v. Allstate Ins. Co.,* 534 Pa. 29, 43, 626 A.2d 502, 510 (Pa.1993). The duty to defend is triggered whenever the complaint states allegations that "potentially fall within the coverage provided." *American Contract Bridge League v. Nationwide Mutual Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir.1985). An insurer's duty to indemnify, however, requires a higher threshold, as that duty is triggered only when the claim is *"actually* within the policy coverage." *Air Prods. & Chems. v. Hartford Acci-*

*dent & Indem. Co.,* 707 F.Supp. 762, 766 (E.D.Pa. 1989), *aff'd,* 25 F.3d 177 (3d Cir.1994).

**6.** Like the Federal policy, the insurance policy in *Brotech* provided coverage for damages arising out of an advertising injury. "Advertising injury" in that policy was defined as:

an injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right to privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

*Brotech,* 857 F.Supp. at 426.

'piracy' occurring in the course of advertising activity could reasonably mean." *Id.* at 428. Thus considering "piracy" in the context of the specific insurance policy involved, the *Brotech* court concluded that "piracy" as used by the policy at issue did not describe patent infringement or other theft concerning the *product,* but instead referred to " 'misappropriation or plagiarism found in the elements of the advertisement itself—in its text form, logo, or pictures.' " *Id.* (quoting *Iolab,* 15 F.3d at 1506). Because the claim in *Brotech* involved the product itself and not the advertisement of the product, coverage was unavailable to the plaintiff. *Id.*

The Court concurs with *Brotech*'s rationale and shall apply it here with analogous results. In this case, where the allegations of "piracy" in the initial complaint are limited to infringement of the product itself and do not relate to the advertisement of the product, the protection afforded by the Federal policy against "piracy" does not extend to the patent infringement claim against ICD.

### B.

ICD's second argument is that Procter & Gamble's initial complaint could be construed as seeking damages for ICD's alleged unfair competition, and that since coverage for "unfair competition" is included within the Federal policy's definition of "advertising injury," Federal is required to provide coverage from the filing of the initial complaint to the time the amended complaint was filed. Prior to amending its complaint, Procter & Gamble had made no allegations of unfair competition against ICD.[7] While ICD agrees that the initial complaint contains no allegations of unfair competition against ICD on its face, ICD contends that this elision is not fatal to its position because the claim for unfair competition can be fairly discerned from a retrospective review of the amended complaint, certain discovery requests from Procter & Gamble, and from a line of questioning employed by Procter & Gamble's counsel at the deposition of Confab's president of sales and marketing.[8] Given the nature of the parties' arguments, the issue this Court must thus resolve is whether Federal was obligated to look beyond the four corners of the complaint when deciding whether an allegation was covered under the Federal policy. For this answer we turn, in the first instance, to the

---

7. Unlike the initial complaint, the amended complaint set forth a clear unfair competition claim stating that ICD and Confab advertisements "deceived or had a tendency to deceive a substantial portion of the retail stores" purchasing Procter & Gamble's products. Amended Complaint ¶ 16. Specifically, ICD and Confab were accused of engaging in unfair competition by making statements such as "the ICD Plus product was the best in the market" and "consumer tests have shown a 3:2 preference (win) over the leading Branded Plus." *Id.* ¶ 15.

8. It is well established that a claim for coverage based on allegations of unfair competition would be covered only in the event Procter & Gamble sought damages based on the common law tort of unfair competition. *Brotech,* 857 F.Supp. at 428–29 (collecting cases). As one court has explained, common law unfair competition

> is generally thought to be synonymous with the act of "passing off" one's goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection. According to some authorities, the tort also includes acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.

*Bank of the West,* 2 Cal.4th at 1263, 833 P.2d at 551, 10 Cal.Rptr.2d at 544. Accordingly, because patent infringement and unfair competition are "separate and independent" actions, *Brotech,* 857 F.Supp. at 428, pure patent infringement would not be covered under the term "unfair competition." *Id.* at 428–29. Like a claim for coverage based on piracy, the alleged tort of unfair competition must also stem from some entity's advertising activities to be covered. *See Davila v. Arlasky,* 857 F.Supp. 1258, 1261–63 (N.D.Ill.1994) (rejecting argument that "unfair competition" included an action for patent infringement due to the lack of causal relationship between the patent infringement suit and the insured's advertising activities), *dismissed,* 47 F.3d 1182 (Fed.Cir.1995).

The allegations in the amended complaint appear at first glance to meet these criteria. Procter & Gamble's claim in the amended complaint was for "unfair competition arising under the common laws of the various states" originating from what was purported to be false advertising. Consequently, for purposes of deciding these motions, the Court will assume that the allegations in the amended complaint are sufficient to set forth a coverable claim for unfair competition under the Federal policy and that they would lead to coverage if it was determined that the allegations were made as a matter of law from the filing of the initial complaint.

teachings of the Supreme Court of Pennsylvania.

In *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246 (Pa.1988), the last time the Supreme Court of Pennsylvania considered this issue, the insured, Gene's Restaurant, Inc., had been sued for willful and malicious assault by one of the restaurant's patrons, who claimed that he had been attacked by certain employees of the restaurant. The restaurant sought coverage from its liability insurer, but because the complaint alleged intentional assault and the insurance policy covered only those bodily injury claims that arose as a result of an accident, the insurer refused to pay for the restaurant's costs of defending the suit. In the ensuing declaratory judgment action filed by the restaurant, the Supreme Court of Pennsylvania held that the insurer was not required to provide coverage because torts based on intentional conduct, the type of conduct alleged in the complaint, were not covered under the insurance policy. *Id.* at 309, 247, 548 A.2d 246; *see also Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 594, 105 A.2d 304, 307 (Pa.1959) ("[T]he rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action....").

 Intermediate Pennsylvania appellate courts have steadfastly applied this rule. *See Aetna Casualty & Sur. Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94, 98 (Pa.Super.1994) ("The insurer's obligation is fixed solely by the allegations in the underlying complaints.") (citing *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 564, 618 A.2d 945, 953, *appeal denied*, 536 Pa. 630, 637 A.2d 290 (Pa.1993); *Germantown Ins. Co. v. Martin*, 407 Pa.Super. 326, 331, 595 A.2d 1172, 1174 (Pa.Super.1991), *appeal denied*, 531 Pa. 646, 612 A.2d 985 (Pa.1992); *Hartford Mutual Ins. Co. v. Moorhead*, 396 Pa.Super. 234, 238–39, 578 A.2d 492, 494–95 (Pa.Super.1990), *appeal denied*, 527 Pa. 617, 590 A.2d 757 (Pa.1991); *United Servs. Auto Ass'n v. Elitzky*, 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (Pa.Super.1986), *appeal denied*, 515 Pa. 600, 528 A.2d 957 (Pa.1987)); *Humphreys v. Niagara Fire Ins. Co.*, 404 Pa.Super. 347, 590 A.2d 1267 (Pa.Super.) ("[T]he critical consideration is that the obligation of an insurer to defend an action is fixed solely by the allegations in the underlying complaint."), *appeal denied*, 528 Pa. 637, 598 A.2d 994 (Pa.1991); *D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 235, 507 A.2d 857, 859 (Pa.Super.1986) ("*It is the face of the complaint* and not the truth of the facts alleged therein which determines whether there is a duty to defend." (emphasis added)). It is apparent that under Pennsylvania law the allegations contained in the *complaint* are the sole points of reference for determining whether a claim comes within the scope of the coverage under an insurance policy. Consequently, extrinsic evidence, such as discovery requests or questions asked by counsel at a deposition, need not be considered when determining whether a particular claim falls within the scope of the policy. Because in this case it is undisputed that the initial complaint is devoid of any allegation of conduct constituting unfair competition or indication that it was ICD's advertising activities that served as the basis for Procter & Gamble's patent infringement, ICD's request for coverage necessarily fails.

Despite what appears to be the clear mandate of Pennsylvania authority, ICD submits that the Court should follow the approach to this issue taken in *Safeguard Scientifics v. Liberty Mutual Ins. Co.*, 766 F.Supp. 324 (E.D.Pa.1991), *rev'd in part on other grounds*, 961 F.2d 209 (3d Cir.1992). In *Safeguard Scientifics*, a case applying Pennsylvania law, the plaintiffs sought reimbursement from their insurer for the defense costs they incurred when a former president of one of the plaintiffs filed suit alleging that the plaintiffs had made knowingly false and defamatory statements about him. Though the policy at issue afforded the insured plaintiff coverage for negligent or reckless slander, the insurer refused to pay for the defense costs based on an exclusion in the policy for knowingly false defamation. Judge Katz first observed the apparent tension between two basic principles guiding an insurer's duty to defend:

The law is of two minds in determining the extent to which an insurance company owes an obligation to defend. On the one hand, the law looks to the four corners of the complaint to define the claim. *See, e.g., United Servs. Auto Ass'n v. Elitzky,* 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986). On the other hand, 'where a claim *potentially* may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril.' *Cadwallader,* 396 Pa. at 589, 152 A.2d at 488 (emphasis added). *Id.* at 330. In attempting to harmonize what appear at first glance to be opposing statements, Judge Katz predicted that the Supreme Court of Pennsylvania would reconcile these concepts by requiring an insurer to provide a defense where a complaint could be "reasonably amended" to state a claim compensable under the insured's insurance policy. *Id.* at 330; *see also Britamco Underwriters v. Emerald Abstract Co.,* 855 F.Supp. 793, 798–99 (E.D.Pa.1994) (Katz, J.) (employing same approach). Thus, although the complaint stated a claim for intentional defamation that did not fall within the scope of the insurance policy, Judge Katz decided that it was reasonable to believe that the claim could have potentially been for reckless or negligent slander, and, therefore, the insurer was required to provide coverage. *Safeguard Scientifics,* 766 F.Supp. at 330; *see also Emerald Abstract,* 855 F.Supp. at 797–99 (finding that complaint alleging breach of fiduciary duty could be reasonably amended to include a claim for negligence).

While the Supreme Court of Pennsylvania has not had occasion to consider the validity of the *Safeguard Scientifics* approach, all intermediate Pennsylvania appellate courts that have considered this issue since *Safeguard Scientifics* was decided have not followed it and have, instead, continued unabatedly to apply the rule that it is the allegations within the four corners of the complaint that govern. *See Roe,* 650 A.2d at 94; *Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208 (Pa.Super.), *appeal discontinued,* —— Pa. ——, 647 A.2d 895 (Pa.1994); *Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 636 A.2d 649 (Pa.Super.1994); *American States Ins. Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 628 A.2d 880 (Pa.Super.1993); *Stidham,* 421 Pa.Super. at 548, 618 A.2d at 945; *Heffernan & Co. v. Hartford Ins. Co. of Am.,* 418 Pa.Super. 326, 614 A.2d 295 (Pa.Super.1992); *Biborosch v. Transamerica Ins. Co.,* 412 Pa.Super. 505, 603 A.2d 1050 (Pa.Super.), *appeal denied,* 532 Pa. 653, 615 A.2d 1310 (Pa.1992); *see also Air Prods. & Chems., Inc. v. Hartford Accident & Indem. Co.,* 25 F.3d 177, 179 (3d Cir.1994) ("It is apparent that in seeking summary judgment Aetna was asking the district court to look beyond the face of the underlying complaint to decide Aetna's initial duty to defend. This the district court was not free to do unless this case triggered cases outside the general Pennsylvania rule."). This Court, too, concludes that the "four corners of the complaint" rule is the correct statement of Pennsylvania law and respectfully declines to follow the *Safeguard Scientifics* approach. In doing so, the Court notes that Pennsylvania intermediate appellate courts have reconciled the apparently contradictory coverage principles addressed in *Safeguard Scientifics* by allowing coverage for claims that "potentially fall" within the scope of coverage, but only insofar as those "potential" claims are grounded in the complaint itself. *See Roe,* 650 A.2d at 99 ("The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or *potentially* within the scope of the policy"); *Humphreys,* 404 Pa.Super. at 354, 590 A.2d at 1271 ("The obligation to defend arises whenever the underlying complaint ... potentially may come within the coverage of the policy."); *see also American States,* 427 Pa.Super. at 183, 628 A.2d at 880 (same) (citing, *inter alia, Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (Pa.1959)).

 Even assuming that the approach taken in *Safeguard Scientifics* presages a future decision by the Pennsylvania Supreme Court, ICD's argument falters nonetheless. In concluding that coverage should have been afforded to the insured in *Safeguard Scientifics,* Judge Katz rested his decision on the following observation:

To make [the complaint] determinative would be to turn the issue of coverage over to the vagaries of an opponent's pleading. The overstatement of a claim or the hyperbole of the pleader should not control whether an insured is entitled to a defense. "This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them."

*Safeguard Scientifics,* 766 F.Supp. at 330 (quoting *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 69, 575 N.E.2d 90, 94, 571 N.Y.S.2d 672, 676 (N.Y.1991)). It is one thing to conclude that an insurer owes a defense to its insured where proof of negligence or recklessness would permit a recovery although the complaint against the insured contains allegations of intentional conduct. The use of the word "intentional" as opposed to "negligence" or "recklessness" may, indeed, be the byproduct of an inartful pleader. It is quite another altogether, however, to suggest that the insurer is obligated to defend the insured on the basis of the mere possibility that at some point in the future an entirely different cause of action relying on separate evidence and requiring the proof of very different elements may be pursued against the insured. Common law unfair competition and patent infringement being discrete causes of action requiring the proof of distinct elements, it can hardly be said that the failure to plead a cause of action for unfair competition in a patent infringement action is the result of "overstatement," "hyperbole," or "nuance." *Safeguard Scientifics,* 766 F.Supp. at 330 (quoting *Fitzpatrick* ). Because the original complaint in this matter made allegations of only patent infringement, that complaint "could not be [reasonably] changed by amendment into a totally different cause of action based on [unfair competition] so as to bring it within the terms of the [Federal] policy." *Wilson,* 377 Pa. at 594, 105 A.2d at 307. ICD's insistence, therefore, that the allegations of patent infringement in the original complaint embraced, *sub silentio,* claims for unfair competition is unjustified, and like its first argument, is rejected as well.

## IV.

Federal has amply demonstrated that it is not liable to ICD for the defense costs incurred prior to Procter & Gamble filing its amended complaint. Accordingly, Federal's motion is granted and judgment will be entered in favor of Federal and against ICD.

An order consistent with the rulings in this memorandum follows.