AMERICAN PLANNED COMMUNITIES, INC. and James C. Hugill, Plaintiffs,

v.

STATE FARM INSURANCE CO., Defendant.

Civil Action No. 98–4229.

United States District Court, E.D. Pennsylvania.

Nov. 24, 1998.

Keith J. Williams, McNamara & Bolla, Doylestown, PA, for Plaintiffs.

Conrad J.J. Radcliffe, Christine H. Sheridan, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Defendant.

## MEMORANDUM & ORDER

KATZ, District Judge.

In April 1997, Ralph and Joan Mazer filed a complaint in state court against American Planned Communities and James Hugill (hereinafter APC) alleging that APC intentionally misrepresented that the property the Mazers purchased from APC was classified as residential when it was in fact zoned for office research and other non-residential uses. Subsequently, Dennis and Anne Goren made similar allegations in another complaint filed against APC in September 1997. APC reported these complaints to its insurer, State Farm Insurance Company (State Farm), and requested that State Farm provide a defense. When State Farm denied coverage, APC commenced this action in the

Bucks County Common Pleas Court seeking a declaration that the insurance policies in question require State Farm to defend and indemnify APC. State Farm removed the case to this court and now moves for summary judgment on the basis that the policies do not cover claims such as those in the underlying cases. State Farm argues that the definition of "occurrence" in the policies clearly excludes intentional actions and that, because the underlying complaints allege *only* intentional action, State Farm has no obligation to indemnify or defend APC. State Farm alternatively argues that other exclusions bar coverage.

*Discussion*[1]

As jurisdiction is based on diversity of citizenship, the court is required to apply the substantive law of the appropriate state. *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The underlying case in this declaratory action is taking place in Pennsylvania, and all parties implicitly agree that Pennsylvania law applies.

 Pennsylvania law holds that the first step in a declaratory judgment action concerning insurance coverage is the ascertainment of the policy's scope. *See, e.g., General Accident Ins. Co. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (Pa.1997). After this determination is made, the court must examine the complaint in the underlying action to assess whether coverage is required. *See id.* In analyzing these issues, the court must apply Pennsylvania's clear, well-settled rules governing the interpretation of an in-surance contract. Normally, the court rather than the jury interprets the contract with the goal of determining the intent of the parties as indicated by the language of the contract itself. When the language of the contract is unambiguous, the court must give effect to that language. *See Gene and Harvey Builders v. Pennsylvania. Mfrs. Ass'n Ins.*, 512 Pa. 420, 517 A.2d 910, 913 (Pa.1986); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983). A provision is ambiguous if "reasonably intelligent" people "on considering it in the context of the entire policy would honestly differ as to its meaning." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982) (citations omitted). While policy language that is ambiguous must be strictly construed against the insurer, *see, e.g., Standard Venetian Blind Co.*, 469 A.2d at 566, the court should read policy provisions so as to avoid ambiguity and not twist the language or rewrite the contract to create doubts where none exist. *See Northbrook Ins. Co.*, 690 F.2d at 372. As with other contracts, the insurance contract must be construed as a whole. *See, e.g., Luko v. Lloyd's London*, 393 Pa.Super. 165, 573 A.2d 1139, 1142 (Pa.Super.1990).

In this case, State Farm seeks release of both its obligation to indemnify and defend. As this court has previously explained,

> The duty to defend is a distinct obligation separate and apart from the duty to indemnify. The duty to defend arises whenever claims asserted by the injured party potentially come within the coverage of the

---

1. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. See *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the movant does not have the burden of proof on the underlying claim or claims, that movant has no obligation to produce evidence negating its opponent's case, but merely has to point to the lack of any evidence supporting the non-movant's claim. When the party moving for summary judgment is the party with the burden of proof at trial, and the motion fails to establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. See *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir.1992).

policy, while the duty to indemnify arises only when the insured is determined to be liable for damages within the coverage of the policy. It follows then, that when the claims in the underlying action have not been adjudicated, the court entertaining the declaratory judgment action must focus on whether the underlying claims could potentially come within the coverage of the policy. If there is a possibility that any of the underlying claims could be covered by the policy at issue, the insurer is obliged to provide a defense at least until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage. On the other hand, if there is no possibility that any of the underlying claims could be covered by the policy at issue, judgment in the insurer's favor with regard to the duty to defend and indemnification is appropriate.

*Britamco Underwriters, Inc. v. Stokes,* 881 F.Supp. 196, 197–98 (E.D.Pa.1995) (internal citations omitted); *see also General Accident Ins. Co.,* 692 A.2d at 1093–94 (discussing same); *Redevelopment Auth. of Cambria County v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581, 589 (Pa.Super.1996) (same).

■ It is true that if any portion of the claims might potentially fall within coverage of the policy, the insurer must defend as to all claims until the suit can be clearly limited to a claim for recovery excluded from the policy's scope. *See, e.g., Brugnoli v. United Nat'l Ins. Co.,* 284 Pa.Super. 511, 426 A.2d 164, 166 (Pa.Super.1981). However, Pennsylvania courts have consistently denied coverage when the allegations of underlying complaints obviously fall within policy exclusions or are otherwise not covered. *See Britamco Underwriters v. Emerald Abstract Co.,* 855 F.Supp. 793, 799 (E.D.Pa.1994).

In determining whether claims could potentially come within the scope of the policy, the court should look solely to the allegations of the complaint in the underlying action. *See, e.g., Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985). Pennsylvania courts have strictly applied the rule that the complaint itself governs coverage and have not been inclined to consider possible alternative pleadings. *See, e.g., I.C.D. Indus., Inc., v. Federal Ins. Co.,* 879 F.Supp. 480, 487–88 (E.D.Pa.1995) (noting that Pennsylvania courts generally evaluate underlying complaints on their face; citing cases rejecting liberal interpretation).

With these standards in mind, we now turn to the policies and claims at issue in this case.

*Relevant Policy Provisions*

APC was covered by three insurance policies issued by State Farm: a Commercial Liability Umbrella Policy, a Contractor's Policy, and a Builders' Risk Policy.[2] Each of these policies provide coverage for the same situations:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. This insurance applies only: 1) to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period[.] [3]

Contractor's Policy § 2; Builders' Risk Policy § 2; *see also* Commercial Umbrella Policy Agreement at 1.[4]

An "occurrence," in turn, is defined as

---

**2.** The court acknowledges dispute regarding whether or not the Builders' Risk Policy applies. Both plaintiffs' response to defendant's motion for summary judgment and earlier documents contend that the defendant issued three policies; the defendant implicitly argues that only two policies are at issue. For purposes of this motion, the court assumes that the Builders' Risk Policy does apply, and subsequent discussion incorporates this assumption.

**3.** The two other situations in which insurance applies are not relevant here.

**4.** "If you are legally obligated to pay damages for ... property damage ... to which this insurance applies, we will pay your net loss minus the retained limit.... This insurance applies only: 1. to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period...." *Id.* at Coverage L–Business Liability.

a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage; or

b. the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury.

Contractor's Policy, Definitions (12)(a)-(b); Commercial Umbrella Policy, Definitions (10)(a)-(b); Builders' Risk Policy, Definitions (10)(a)-(b).

There are also numerous other exclusions that might become relevant in other contexts, and both sides extensively argue these points. However, as the definition of "occurrence" is dispositive in this case, analysis of these exclusions is not necessary.

*The Underlying Complaints*

■ Both the Mazer and the Goren complaints allege only intentional behavior that does not fall within the definition of "occurrence" in the relevant policies. While it is conceivable that the plaintiffs could have written a complaint that would fall within the scope of coverage, the present complaints specifically allege intentional action with respect to all claims.

The Mazer Complaint is captioned as "Fraud, Conspiracy to Defraud, and Fraudulent Concealment"; the presence of fraud in each claim correspondingly imports a requirement of intentional action into each claim. More important than the plaintiffs' designation of the claims, the specific allegations contained within the complaint can only be cast as intentional and could not reasonably be viewed as alleging facts that could be construed as negligent actions. The plaintiffs allege that Hugill and APC themselves constructed the homes at issue, *see* Compl. ¶ 11, and further state that one of the real estate agents for APC provided literature that "omitted any reference to the fact that the homes in Norwalk were not zoned residential and actually were zoned for Office Research." *Id.* ¶ 13. The Mazers further allege that a subagent for APC made "fraudulent" statements regarding the zoning of

that area. *Id.* ¶ 14. Later, the plaintiffs state that

15. Defendants utilized an Agreement of Sale that allows the seller to leave the zoning classification blank for single family detached homes. However, plaintiffs insisted that defendants had to specify the zoning for the home they were purchasing in writing on the Agreement of Sale before plaintiffs would sign the Agreement of Sale.

16. Defendants prepared the Agreement of Sale and filled out the section for zoning as "residential." Defendants omitted any reference to the fact that the property was actually zoned Office Research and was not zoned residential.

. . . . .

18. On May 4, 1993, Defendants James C. Hugill ... and American Planned Communities, Inc., through its agents, employees, servants ... fraudulently represented in writing on the agreement of sale that the property being purchased by plaintiffs was zoned residential though the defendants knew that the property was not zoned residential but rather was zoned office research.

*Id.* ¶¶ 15–16, 18; *see also id.* ¶ 19 (stating that Hugill orally informed plaintiffs, upon explicit question, that residential zoning designation was correct). Plaintiffs also allege that both Hugill and APC "conspired to fraudulently represent to Plaintiffs that the home plaintiffs were purchasing was zoned residential when they knew that the home was zoned office research." *Id.* at ¶ 20. The same claim is made with respect to fraudulent concealment: the oral and written representations of the defendants allegedly concealed the true zoning from the plaintiffs. *See id.* at ¶ 21. Subsequent paragraphs state that the defendants knew that the information they provided was false and that this violated their duty of disclosure, *see id.* ¶ 22, and that the defendants were aware that the plaintiffs would rely on those representations. *See id.* ¶ 23, *see also id.* ¶ 31 (alleging that purpose of falsehood was to induce

plaintiffs to expend $355,000), ¶ 32 (alleging that zoning classification was a material fact).

The Goren Complaint, although much less detailed, describes similar allegations and maintains that "the said representations as to the zoning of the property were false and known to be false at the time made by the defendants." Goren Compl. ¶ 10; *see also id.* ¶ 13 (stating that defendants knowingly misrepresented the zoning). The Gorens also state that the representation regarding zoning was material. *See id.* ¶ 9.

■ Each of the variants of fraud alleged in the complaints require a demonstration of intentional action, which takes the incidents out of the scope of the defined term "occurrence." According to Pennsylvania law, a showing of fraud requires that there be a representation that is material to the transaction at issue that is made falsely "with the intent of misleading another into relying on it." *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (Pa.1994). The reliance must be justifiable and proximately cause the resulting injury. *See id.* Pennsylvania courts have stated that fraud is "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false...." *Delahanty v. First Penn. Bank,* 318 Pa.Super. 90, 464 A.2d 1243, 1251 (Pa.Super.1983); *see also DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644, 647 (Pa. 1958) (stating that, in real estate context, fraud "arises where the misrepresentation is knowingly false, where there is a concealment calculated to deceive, or where there is a non-privileged failure to disclose"); *Gibbs,* 647 A.2d at 891 (noting distinction between torts of negligent misrepresentation and intentional torts such as fraud or intentional misrepresentation). Concealment alone may create a sufficient basis for finding that a party engaged in fraud so long as the other elements of fraud are present. *See Wilson v. Donegal Mut. Ins. Co.,* 410 Pa.Super. 31, 598 A.2d 1310, 1316 (Pa.Super.1991).

■ Pennsylvania also recognizes the related tort of Liability for Fraudulent Concealment. *See Roberts v. Estate of Barbagallo,* 366 Pa.Super. 559, 531 A.2d 1125, 1130 (Pa.Super.1987). This tort permits a finding of liability when vendors or their agents intentionally fail to disclose material information. *See id.*[5] The Pennsylvania Superior Court stated that liability under § 550 is encompassed within the Pennsylvania Supreme Court's definition of fraud. *See id., quoting DeJoseph,* 139 A.2d at 644. "Under § 550, the concealment must be intentional and it must relate to material information." *Id.* at 1130–31. Thus, under either a common law fraud approach or under § 550, intentional action is a requirement.

Given these premises, Pennsylvania case law unsurprisingly holds that such intentional actions cannot fall under the definition of "occurrence" as included in the policies in this case. In *Gene & Harvey Builders v. Pennsylvania Manufacturers Association Insurance Company,* 512 Pa. 420, 517 A.2d 910 (Pa.1986), the Pennsylvania Supreme Court ruled that an insurer was not obligated to supply a defense or indemnification to a building contractor who was accused, in an underlying suit, of intentionally concealing defects in the land on which homes were built. Analyzing a definition of occurrence that was identical to the one at issue in the present case, *see id.* at 912, the court stated that the "alleged intentional concealing of the condition of the land or the alleged intentional misrepresentations are not 'occurrences' under the policy, for an intentional act is not an accident (and only accidents are covered)." *Id.* at 913.[6]

Similarly, in *U.S. Fidelity & Guaranty Company v. Korman Corporation,* 693 F.Supp. 253 (E.D.Pa.1988), the court ruled that insurers were not obligated to maintain a defense or provide indemnification for allegations of fraud. In *Korman,* the underlying

---

**5.** The Restatement (Second) of Torts states:

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

Restatement (Second) of Torts § 550.

**6.** The underlying plaintiffs in that case also made claims of negligence, unlike the plaintiffs in the present cases.

plaintiffs sued the insured for selling homes knowing that they were constructed on or near a landfill that had been used as a site for illegal disposal of hazardous wastes that could be or were leaching into waters. *See id.* at 255. The policies in that case also provided coverage for property damage "caused by an occurrence"; "occurrence" was again defined as "an accident." *Id.* at 258. Because the fraud counts in that case alleged intentional misrepresentation and no other factual basis for liability, the court ruled that those intentional acts and intentional misrepresentations were not accidents and therefore not occurrences covered by the policy. *See id.*[7]; *see also Nationwide Prop. & Cas. v. Feryo Hearing Aid Serv.*, 895 F.Supp. 85, 87 (E.D.Pa.1995) (reciting cases applying Pennsylvania law that "intentional acts do not amount to 'occurrences' because they are not accidental in nature"); *Marine Office of Amer. v. Quarry Associates*, 963 F.Supp. 1392, 1398 (E.D.Pa.1997) (holding that insurer must provide coverage because potentially negligent act could qualify as "occurrence"; distinguishing case from intentional claims).

Likewise, the only causes of action described in the Mazer and Goren complaints rely on intentional acts that do not qualify as "occurrences" as defined by the policies in question. Therefore, the insurer State Farm does not have an obligation to indemnify or defend the insureds in the underlying actions.[8]

The plaintiffs' arguments against this conclusion are unavailing. First, the plaintiffs maintain that fraud in Pennsylvania can be shown by recklessness. However, there are no allegations of recklessness in the underlying complaints, and the facts claimed could not reasonably be read as alleging recklessness. Rather, the underlying complaints specifically claim intentional and knowing action on the part of APC. Moreover, while plaintiffs correctly state that silence without

a duty to speak does not amount to fraud, the Mazers and Gorens do not allege silence: they allege that there were specific, affirmative misrepresentations made regarding the zoning of their homes. Some individual paragraphs in the complaints do allege "omissions," but the underlying plaintiffs contend that this silence was in willful violation of the duty to disclose. Third, the plaintiffs, citing *Korman*, state that unintentional breaches of contract would be a covered occurrence. Assuming arguendo that unintentional breaches of contract would not fall into an exclusion of coverage, this claim ignores the fact that the allegations in the complaints are for intentional breaches only.

Plaintiffs also rely on the policy definition of "impaired property" and state that no exclusion bars coverage of their actions under this definition. The definition of impaired property is property that is "less useful because ... you have failed to fulfill the terms of a contract or agreement." Builders' Risk Policy, Definitions (5); Commercial Umbrella Policy, Definitions (6); Contractor's Policy, Definitions (7). The plaintiffs' argument is faulty for at least two reasons. First, the claimed incidents would still not qualify as an "occurrence" because of the intentional nature of the actions alleged. Second, a specific exclusion bars coverage for "property damage to impaired property ... arising out of" either "a defect ... in your product or your work" or "a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." Builders' Risk Policy, Business Liability Exclusion (15); Commercial Liability Policy, Business Liability Exclusion (14); Contractor's Policy, Business Liability Exclusion (15). Either clause could act to bar coverage, as in this case. The second clause excludes coverage for property that is impaired by the failure to perform properly a

---

7. The finding that the intentional acts were not occurrences was only a part of the basis of the *Korman* decision; while other claims in that case did constitute "occurrences," the court found that those other claims fell into other policy specific exclusions. *See id.* at 258–61.

8. The defendant State Farm also argues that the underlying plaintiffs do not seek covered dam-

ages and therefore the APC plaintiffs are not entitled to indemnity and defense on that basis as well; i.e., State Farm argues that even if the claims do deal with "occurrences," specific policy exclusions would release State Farm from its coverage obligations. As the court finds that the underlying claims do not involve policy "occurrences," the court does not reach this argument.

contract. In addition, some Pennsylvania case law holds that improper placement of a home or misrepresentations regarding the land's condition qualify as a "product." *See Korman Corporation*, 693 F.Supp. at 261 (stating that selection of lot by contractor and seller was part of product); *see also Gene & Harvey Builders*, 517 A.2d at 913–14 (stating that part of contractor's "product" was "reasonable inspection of the lot and representing the condition of the lot to the owner").

Finally, the insureds repeatedly argue that, even if the complaints in the underlying action are construed as alleging only intentional action, State Farm is obligated to defend so long as the complaint could reasonably be amended to state a claim within the coverage of the policy, citing *Safeguard Scientifics v. Liberty Mutual Insurance Company*, 766 F.Supp. 324 (E.D.Pa.1991). While *Safeguard Scientifics* did so hold, as was noted in *I.C.D. Industries, Inc. v. Federal Insurance Company*, 879 F.Supp. 480 (E.D.Pa.1995), every intermediate Pennsylvania appellate court that considered the issue following *Safeguard* "continued unabatedly to apply the rule that it is the allegations within the four corners of the complaint that govern." *Id.* at 488. If the underlying complaint includes allegations of *both* intentional and negligent action, Pennsylvania courts have consistently required coverage. However, if the complaint makes no allegation of non-intentional action, Pennsylvania courts have consistently denied coverage. *See, e.g., Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649 (Pa.Super.1994) (requiring defense in case alleging intentional assault because part of the complaint described incident as "accident" and otherwise presented negligence theory of recovery); *cf. Britamco Underwriters v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208 (Pa.Super.1994) (denying coverage because underlying complaint only alleged intentional actions and did not suggest negligent or even reckless cause of action). While plaintiffs may well be correct that the Mazers and Gorens may at some future point amend their complaints so as to include allegations of non-intentional acts, the court may not require State Farm to defend or indemnify the present action based upon the present allegations of the underlying complaints, all of which allege intentional actions.

An appropriate order follows.

### *ORDER*

AND NOW, this 24th day of November, upon consideration of Defendant's Motion for Summary Judgment and Plaintiffs' response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**.