NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4135
_____

REGENT INSURANCE COMPANY,
Appellant

v.

STRAUSSER ENTERPRISES, INC; GARY STRAUSSER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-09-cv-03434)
Honorable James Knoll Gardner, District Judge
_____

Argued May 18, 2020

BEFORE:  MCKEE, BIBAS, and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: August 7, 2020)
_____

Christina Capobianco
Fineman Krekstein & Harris
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA 19103

Michael S. Saltzman (argued)
Goldberg Segalla
1700 Market Street
Philadelphia, PA 19103

    <u>Attorneys for Appellant</u>

Patrick C. Campbell, Jr. (argued)
Montgomery McCracken Walker & Rhoads
1735 Market Street
21st Floor
Philadelphia, PA 19103

    Attorney for Appellees

_____

OPINION*
_____

COWEN, <u>Circuit</u> <u>Judge</u>.

In this insurance coverage dispute, Plaintiff Regent Insurance Company ("Regent") appeals from the order of the United States District Court for the Eastern District of Pennsylvania granting in part, denying in part, and dismissing in part the cross-motions for summary judgment filed by Regent and Defendants Strausser Enterprises, Inc. ("SEI") and Gary Strausser ("Appellees"). We conclude that Regent has no duty to defend (or indemnify) Appellees in the underlying action filed in the District Court captioned <u>Segal v. Strausser Enterprises, Inc.</u> , case number 07-cv-04647 ("<u>Segal</u> Action"). Accordingly, we will vacate the order in part and will remand with instructions to grant Regent's motion for summary judgment and deny Appellees' summary judgment motion as to Count V of Regent's amended complaint and to enter judgment in favor of Regent and against Appellees declaring that Regent has no duty to defend or indemnify Appellees in the <u>Segal</u> Action.

I.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

On November 5, 2007, Kenneth Segal, the Karen and Kenneth Segal Descendants Trust ("Trust"), and Segal and Morel, Inc. ("S & M") (collectively "Segal Plaintiffs") commenced the Segal Action against SEI, Strausser, and Leonard Mellon, Esq. (SEI's attorney). The Segal Action arose from purchase agreements in which SEI sold several parcels of land to S & M (which then assigned its rights and obligations to several limited liability companies ("the S & M LLCs"), of which Segal and the Trust are the sole members). Segal and the Trust subsequently contracted to sell their interests in the S & M LLCs to K. Hovnanian Pennsylvania Acquisitions, LLC ("Hovnanian"). According to the underlying complaint, SEI, Strausser, and Mellon sabotaged the Hovnanian deal by manufacturing a frivolous state court lawsuit as well as a frivolous arbitration:

> Plaintiffs bring this action to recover significant damages arising from Defendants' scheme to use the judicial system to interfere with, and ultimately cause the buyers of memberships in limited liability companies to terminate contracts and refuse to negotiate new ones. In short, Defendants manufactured a frivolous lawsuit and then a frivolous arbitration in which they sought to invoke non-existent rights of first refusal that would impede the aforementioned transactions. As is more fully set forth herein, there were no such rights of first refusal, and Defendants knew it before the first lawsuit was filed. They persisted with the frivolous claims nonetheless, ultimately causing Plaintiffs to lose in excess of $10 Million.

(JA72.)

The Segal Action complaint included four counts: (1) tortious inference with contract; (2) tortious interference with prospective contractual relations; (3) "Malicious Prosecution; 42 Pa. C.S.A. § 8351 *et seq.*" (JA104 (emphasis omitted)); and (4) abuse of process.

Appellees advised Regent of the Segal Action and sought coverage. The

insurance policy at issue expressly provides coverage for personal and advertising injury

liability:

> **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

(JA188.) "**SECTION V – DEFINITIONS**" defines "Personal and advertising injury"

as:

> **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
>     . . . .
>
>     **b.** Malicious prosecution;
>
>     . . . .

(JA197.) However, Coverage B also includes the following exclusion:

> **2. Exclusions**
>
> This insurance does not apply to:
>
>     **a. Knowing Violation of Rights of Another**
>
>     "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

. . . .

(JA189.)

Regent provided a defense to the Segal Action subject to a reservation of rights and filed the present action, seeking a declaration that it has no duty to defend or indemnify Appellees. The parties subsequently filed cross-motions for summary judgment. Following oral argument, the District Court granted in part, denied in part, and dismissed in part both motions for summary judgment. Of particular importance in this appeal, it granted Appellees' summary judgment motion "to the extent it seeks a declaration that [Regent] has a duty to defend [Appellees] in the [Segal Action]" and "to the extent it seeks a declaration that [Regent] has a duty to indemnify [Appellees] for the malicious prosecution claim in the underlying action, with the exception of punitive damages." Regent Ins. Co. v. Strausser Enters., Inc., Civil Action No. 09-cv-0434, at *1 (E.D. Pa. Sept. 28, 2012). In turn, Regent's motion was denied to the extent it seeks judgment on Count V of its amended complaint (seeking declaratory relief on the grounds that the "Knowing Violation of Rights of Another" exclusion applies). Entering partial judgment in favor of and against both Appellees and Regent, the District Court declared that Regent has a duty to indemnify Appellees for the malicious prosecution claim (with the exception of any punitive damages awarded on this claim) as well as to defend Appellees in the underlying action. "It is the sense of this Order that plaintiff [Regent] has a duty to defend [Appellees] against all claims (including liability, compensatory damages and punitive damages) in the underlying action." Id. at *2 n.1.

5

In a thorough opinion, the District Court explained that the policy language is ambiguous because malicious prosecution under Pennsylvania law, codified as "Wrongful use of civil proceedings" by the Dragonetti Act, 42 Pa. C.S.A. § 8351, et. seq., requires more than proof of gross negligence. Instead, proof of actual malice or improper motive is required, and malicious prosecution thereby represents an intentional tort under state law. According to the District Court, "if malicious prosecution under Pennsylvania's Dragonetti Act is an intentional tort, then Coverage B is a Catch-22" because, on the one hand, "Regent promises to cover the Strausser defendants for claims of malicious prosecution so long as no exclusion applies to bar coverage" while, on the other hand, "the 'Knowing Violation' exclusion always applies to malicious prosecution under the Dragonetti Act." Regent Ins. Co. v. Strausser Enters., Inc., 902 F. Supp. 2d 628, 642 (E.D. Pa. 2012). Resolving this ambiguity in favor of the insureds, the District Court determined that Regent has a duty to defend Appellees. The District Court then explained that it would reach the same conclusion even if a malicious prosecution plaintiff could prevail by proving nothing more than gross negligence. It observed that there is a potential for the claim to be covered if the underlying complaint alleges a particular level of knowledge or intent but the defendant would still be held liable under a different level. "Where there is the potential for a claim against a defendant to be covered under the defendant's insurance policy, the insurer has a duty to defend."[1] Id. at

---

[1] We note that the Clerk subsequently granted Regent's motion to stay its appeal pending disposition of the motion for summary judgment filed by Appellees in the underlying Segal Action. The stay was lifted after the motion was decided (and, because

6

642 n.41 (citing <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999)).

## II.

Initially, the District Court concluded that malice or intent constitutes a necessary element of a malicious prosecution claim under the Dragonetti Act.[2]  Instead of defending the District Court's interpretation, Appellees now agree with Regent that "malicious prosecution claims under Pennsylvania law are based on negligence and/or gross negligence."  (Appellees' Brief at 17 (emphasis omitted).)  Under the parties' current interpretation of state law, the policy language clearly does not (as the District Court put it) result in "a Catch-22."  On the contrary, the policy unambiguously covers claims for malicious prosecution based on a showing of gross negligence while excluding coverage for "intentional" (i.e., "Knowing Violation of Rights of Another") claims of malicious prosecution.[3]

Appellees do contend that Regent has waived its challenge to the District Court's interpretation of the Dragonetti Act.  We disagree.  Admittedly, the insurer did initially

the parties had briefed this matter while the appeal was stayed, the appeal was calendared for disposition in due course).

[2] The District Court had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  We possess appellate jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's disposition of the parties' motions for summary judgment.  <u>See, e.g.</u>, <u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247, 265 (3d Cir. 2014).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

[3] Accordingly, we need not (and do not) decide whether the interpretation the state statute offered by the District Court or the understanding proffered by the parties is correct as a matter of law.

indicate in its motion for summary judgment that malice or intent constitutes a required element of this state law cause of action.  See, e.g., Regent Ins., 902 F. Supp. 2d at 641 n.39 ("In its brief in support of its motion for summary judgment, Regent appears to argue that the 'Knowing Violation' exclusion applies to all malicious prosecution claims because malice is a necessary element.  See [JA386-JA389].").  However, Regent did place particular emphasis on the specific allegations set forth in the underlying complaint in the Segal Action.  (See, e.g., JA380 ("Specifically, the Segal Plaintiffs allege that Defendants intentionally and knowingly pursued a baseless and frivolous lawsuit and lis pendens in the hopes of securing monies to which they were not entitled . . . ." (citing JA70-JA107)).)  In any event, Appellees argued in their own summary judgment brief that "Regent's denial of coverage based on the intentional acts exclusion is also wrong because malicious prosecution claims, under Pennsylvania law, are based on negligence and gross negligence, not intentional acts."  (JA312.)  In their brief opposing Regent's motion, they continued to insist that malicious prosecution is not an intentional tort.  In its response to Appellees' motion for summary judgment, Regent essentially agreed with Appellees' understanding of Pennsylvania law and clarified its earlier (arguably more expansive) assertions by stating that, "[a]lthough malicious prosecution is covered when the alleged conduct is negligent, it is not covered when the malicious prosecution is intentional and knowing, as alleged by the Segal Plaintiffs."  (JA455.)  Appellees, in turn, acknowledged Regent's position in their own reply brief and at oral argument.  Although it relied on Regent's briefing as further evidence of contractual ambiguity (even though that briefing actually implicated the distinct legal question of how to interpret a

8

Pennsylvania statute), the District Court did not make any waiver determination and, on the contrary, ruled on the merits of the legal question of whether intent is an element under the Dragonetti Act.

It is well established that "the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321-22 (Pa. 1963) (citing Cadwallader v. New Amsterdam Cas. Co., 152 A.2d 484 (Pa. 1959)). The factual allegations of the underlying complaint are to be taken as true and to be liberally construed in favor of the insured. See, e.g., Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992). In turn, the duty to defend is "fixed solely" by such allegations. Aetna Cas. & Sur. Co. v. Roe, 650 A.2d 94, 98 (Pa. Super. Ct. 1994) (footnote omitted) (citations omitted). "In order to determine whether [the insurer] had a duty to defend [the insured], therefore, we must compare the terms of the [insured's] policy with the nature of the allegations of the underlying complaint[] against [the insured]. We must then determine whether, if the allegations were true, [the insured] might be obligated to provide coverage." Id. at 100 (citing Britamco Underwriters, Inc. v. Weiner, 636 A.2d 649, 651 (Pa. Super. Ct. 1994)).

According to Appellees, "where the underlying complaint alleges intentional action (which is excluded from coverage), but negligence or reckless action would suffice to make the insured's conduct actionable, the claim has the potential to come within coverage if the underlying complaint could reasonably be amended to state a claim under the policy." (Appellees' Brief at 8 (emphasis omitted).) However, this "amendment"

9

approach is inconsistent with Pennsylvania law.  Although the <u>Frog, Switch</u> Court

referenced (and improved upon) the "amendment" line of reasoning adopted by the

district court in <u>Safeguard Scientifics, Inc. v. Liberty Mutual Insurance Co.</u>, 766 F. Supp.

324, 330 (E.D. Pa. 1991), <u>rev'd in part on other grounds & affirmed in part,</u> 961 F.2d

209, 1992 WL 12915247 (3d Cir. Mar. 19, 1992) (non-precedential decision), we did so

as part of our summary of one of the insured's arguments—and did not rely on the

approach to dispose of the appeal in the insurer's favor.  <u>See</u> <u>Frog, Switch</u>, 193 F.3d at

746 & n.2.  "While the Supreme Court of Pennsylvania has not had occasion to consider

the validity of the <u>Safeguard Scientifics</u> approach, all intermediate Pennsylvania appellate

courts that have considered this issue since <u>Safeguard Scientifics</u> was decided have not

followed it and have, instead, continued unabatedly to apply the rule that it is the

allegations within the four corners of the complaint that govern."  <u>I.C.D. Indus., Inc. v.</u>

<u>Fed. Ins. Co.</u>, 879 F. Supp. 480, 488 (E.D. Pa. 1995) (citing eight Pennsylvania Superior

Court decisions including <u>Roe</u> and <u>Biborosch</u>).  We agree that "'the four corners of the

complaint' rule is the correct statement of Pennsylvania law" and that, under this

approach, there is coverage "for claims that 'potentially fall' within the scope of

coverage, but only insofar as those 'potential' claims are grounded in the complaint

itself."[4]  <u>Id.</u> (citing <u>Roe</u>, 650 A.2d at 99; <u>Humphreys v. Niagara Fire Ins. Co.</u>, 590 A.2d

---

[4] Relying on <u>I.C.D. Industries</u>, the author of <u>Safeguards Scientifics</u> subsequently abandoned his own "amendment" approach.  <u>Am. Planned Communities, Inc. v. State Farm Ins. Co.</u>, 28 F. Supp. 2d 964, 970 (E.D. Pa. 1998) ("While plaintiffs may well be correct that the Mazers and Gorens may at some future point amend their complaints so as to include allegations of non-intentional acts, the court may not require State Farm to

1267, 1271 (Pa. Super. Ct. 1991)).

Applying this standard, we determine that the malicious prosecution claim set forth in the underlying complaint in the Segal Action does not "potentially fall" within the scope of coverage.

The underlying complaint clearly alleged intentional and knowing conduct—as opposed to negligence (or gross negligence)—on the part of Appellees. The Segal Plaintiffs specifically alleged that "there were no such rights of refusal, and Defendants knew it before the first lawsuit was filed." (JA72.) "As is more fully developed hereinafter, SEI was aware of an impending transaction and desperately wanted to stop it, hoping that doing so would garner it leverage from which to secure monetary concessions from the Segal Sellers. SEI and Strausser, along with Mellon, their long-time counsel, hatched a baseless, spiteful and malicious plan to derail the transaction by filing a frivolous lawsuit mentioned below." (JA84.) Strausser allegedly admitted that he knew SEI lacked the requisite right of first refusal— "[d]uring this meeting [with representatives of Hovnanian] Strausser candidly acknowledged to those present that although SEI filed the *Lis Pendens* to encompass the entire Property, he knew that SEI possessed no right of first refusal with regard to the single family lots, ie, those lots conveyed by SEI to S&M, Inc. (and subsequently by S&M, Inc. to one of the S&M LLCs) pursuant to the February 28, 2003 Agreement." (JA89-JA90; see also, e.g., JA90 ("By making this admission during this meeting with Hovnanian's representatives,

---

defend or indemnify the present action based upon the present allegations of the underlying complaints, all of which allege intentional actions.").

11

Strausser openly acknowledged the overbreadth of the Complaint that he verified under penalty of perjury just three days earlier.").) Likewise, Appellees' counsel "admitted to the Segal Sellers' counsel [prior to the hearing before the state trial court] that Strausser had instructed him to file anything that he could to stop the transaction." (JA92.) Mellon "also admitted that Strausser, who had verified the [state court] Complaint, had never actually read the pleading." (Id.) In the end, the filing of the state court action and the *Lis Pendens* had "the desired effect: Hovnanian refused to proceed with a closing." (JA87.)

The underlying complaint in the Segal Action further alleged that Appellees proceeded with the claims against the Segal Plaintiffs despite the contrary rulings of the state court and the arbitration panel as well as their own prior admissions.

Specifically, the state trial court offered the following explanation for why it was dismissing the complaint and the *Lis Pendens*:

> Here, [SEI] agrees that 'the instant dispute over the operation of the buy back provision is subject to arbitration.' Plaintiff's Brief Contra Defendants' Petition to Strike Lis Pendens and Dismiss Complaint, p.2. By its own admission, [SEI's] complaint is inappropriate. This admission undermines the notion that [SEI] has pursued its complaint in good faith, and in the Court's opinion tips any balance of the equities against it.

> Exhibit "R", Opinion at 10. A true and correct copy of the February 28, 2006 Opinion in support of the February 28th Order is attached as Exhibit "R". In other words, SEI expressly admitted in its very own filing in opposition to the pending petition to strike, that the dispute underlying its Complaint was not properly before the Court.

(JA93 (emphasis omitted).) "Despite this admission, SEI inexplicably did not withdraw its Complaint prior to the February 27 hearing." (Id.) "With regard to its dismissal of

12

SEI's *Lis Pendens*, the Court was equally direct in admonishing SEI for the frivolity of that filing: 'Thus, [SEI] has used the lis pendens mechanism as a procedural weapon, and this is inappropriate.'" (JA94 (emphasis omitted) (quoting Exhibit R at 10); see also, e.g., id. ("The purpose behind the frivolous filings was not lost on the Court: 'Plaintiff filed its Complaint in order to secure a *lis pendens* attached to the properties at issue in its dispute . . . the practical effect of a recorded *lis pendens* is to render a defendants property unmarketable.'" (quoting Exhibit R at 10)).

SEI instituted arbitration proceedings, and the arbitration panel allegedly rejected its argument that "the Right of First Refusal provisions" prevented the sale of the membership interests, e.g.:

81. The Panel found the Right of First Refusal Provisions at issue to be "clear, precise, and unambiguous," [Exhibit S at 1-2], and found that they imposed "a condition upon the sale of individual building lots and [did] not in any way impose a condition on the individual L.L.C.'s that would prohibit the sale of membership interest in the L.L.C.'s." Id. at 4.

82. Based upon these findings, the Panel held:

"The transfer of a membership interest, in whole or in part, by the L.L.C. assignees of [S&M, Inc.] as set forth in the afore referred to agreements will not trigger, and are not subject to, the right of first refusal as set forth in the agreement of April 25, 2003, as amended."

Id. at 5.

(JA95-JA96 (emphasis omitted).) Meanwhile, SEI appealed from the state trial court's dismissal of its state court complaint and *Lis Pendens*. A letter from Mellon accompanying the statement of appeal stated that it was filed in order to keep the *Lis Pendens* issue alive pending the arbitration and recording of a memorandum of

13

understanding and explained that, "'[w]hile I understand from Attorney Pastor that the Havanian [sic] deal is off, we do not want to have the same problem arise again if it is resurrected, or another third party become interested before the Memorandum of Understanding is filed or arbitration completed.'" (JA97 (emphasis omitted) (quoting Exhibit T).) Despite the resolution of the arbitration proceeding, the appeal was not withdrawn. "By Memorandum Opinion dated October 20, 2006, the Superior Court dismissed Defendants' appeal as moot, and so doing noted, 'we find no basis to disturb the trial court's ruling.'" (Id. (quoting Exhibit U at 4).)

Appellees single out just two allegations in support of their assertion that the underlying complaint set forth a claim for malicious prosecution based on negligent conduct: "E.g., [JA102] (alleging the appeal and arbitration instituted without a 'reasonable basis') & [JA104-JA105] (alleging that SEI and Mr. Strausser could not have reasonably believed that there was a basis to support claims being advanced)." (Appellees' Brief at 19-20).) However, the first allegation clearly implicated the Appellees' knowledge, i.e., Appellees, with the assistance of counsel, instituted the state court complaint, the *Lis Pendens*, the Pennsylvania Superior Court appeal, and the arbitration proceeding "knowing that there was no reasonable basis to the claim being advanced." (JA102.) In the second allegation, Segal Plaintiffs claimed that Appellees commenced and continued to prosecute the legal actions "primarily for the improper purpose of attempting to secure for SEI and Strausser contractual rights that were neither bargained for nor contained within the Purchase Agreements, as amended." (JA104.) Given these circumstances as well as the additional allegations of intentional and

14

knowing actions included in the complaint, the underlying malicious prosecution cause of

action does not trigger Regent's duty to defend.[5]

---

[5] In addition to noting that "the Segal Entities themselves have characterized the argument that the claims in their Underlying Complaint are founded solely on intentional conduct as 'misdirected'" (Appellees' Brief at 4 (quoting JA481)), Appellees' counsel observed at oral argument that the district court's "opinion in the recent Motion for Summary Judgment in the underlying case, [Segal v. Strausser Enterprises, Inc., CIVIL ACTION NO. 07-4647, 2019 WL 2450416, at *11 (E.D. Pa. June 12, 2019),] characterizes the gist of the claim as one being based on gross negligence" (Transcript of Oral Argument at 16). He also refers to the subsequent arbitration proceeding that was "peeled off of that case" (Transcript of Oral Argument at 28) in which "Mr. Strausser won $20 million from Mr. Segal" (id. at 29). However, we are limited to the factual allegations set forth in "the four corners" of the underlying complaint. See, e.g., I.C.D. Indus.,̧879 F. Supp. at 488. In turn, it is our responsibility (and not the plaintiffs, the arbitrators, or the district court in the underlying action) to conduct the requisite analysis under applicable state law to determine if the insurer has a duty to defend in the underlying proceeding.

Appellees raise a number of additional arguments, but we likewise conclude that they are without merit. According to them, "general exclusions cannot, as a matter of policy, be used to eviscerate the express coverages." (Appellees' Brief at 15 (emphasis omitted)). However, the unambiguous "Knowing Violation of Rights of Another" exclusion is a specific component of Coverage B and does not result in illusory coverage for all malicious prosecution claims because it does not apply to claims based on alleged negligence. Furthermore, the cases cited by Appellees either did not apply Pennsylvania law or did not specifically adopt Appellees' "evisceration" line of reasoning. See Hurst-Roche Eng'rs, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336 (7th Cir. 1995) (Illinois law); Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co., 832 F.2d 1037 (7th Cir. 1987) (same); Cincinnati Ins. Cos. v. Pestco, Inc., 374 F. Supp. 2d 451, 460-61 (E.D. Pa. 2004) (concluding that express exclusion for trademark infringement did not apply to distinct claim of trade dress infringement); Fluke Corp. v. Hartford Accident & Indemn. Co., 34 P.3d 809 (Wash. 2001) (en banc) (Washington law). We further believe that the injury allegedly intended by Appellees (i.e., to extract additional concessions out of the Segal Plaintiffs) is of the same general type as (and in fact closely connected to) the harm that allegedly resulted from their actions (i.e., the derailing of the Hovnanian deal itself). See, e.g., United Servs. Auto. Ass'n v. Elitzky, 517 A.2d 982, 987 (Pa. Super. Ct. 1987). Appellees further argue that the exclusion does not apply because the claims are potentially vicarious in nature (based on the attorney's conduct), but Strausser himself allegedly verified the state court complaint and instructed Mellon to file anything he could to stop the Hovnanian transaction. Finally, the District Court properly

15

III.

Accordingly, we will vacate the order in part and will remand with instructions to grant Regent's motion for summary judgment and deny Appellees' summary judgment motion as to Count V of Regent's amended complaint and to enter judgment in favor of Regent and against Appellees declaring that Regent has no duty to defend or indemnify Appellees in the Segal Action.

acknowledged that a duty to indemnify cannot exist in the absence of a duty to defend. See Regent Ins., 902 F. Supp. 2d at 636 ("A duty to defend can exist without a duty to indemnify. However, a duty to indemnify cannot exist without a duty to defend. Frog, Switch & Manufacturing. Co., Inc., 193 F.3d at 746.").